[No. 6,950.—In Bank.]
Oct. 2, 1882.

## IN RE GROVE STREET, IN CITY OF OAKLAND.

PROCEEDING TO CONDEMN LAND FOR STREET IN THE CITY OF OAKLAND—
EMINENT DOMAIN—JURISDICTION—SPECIAL PROCEEDING—PETITION—
APPEAL.—The proceedings purport to have been taken under the Act of
March 28, 1878, "to provide for the opening of streets in the City of
Oakland." The Act requires the petition of five or more residents and
freeholders to the City Council to contain, "*inter alia*," "a statement
that in the opinion of the petitioners the public interests require that
the improvement asked for (describing it generally) should be made."
The averment in the petition of the City Council to the County Court
is that the petition of the residents and freeholders to the Council con-
tained a statement that "in the opinion of the petitioners the improve-
ment asked for should be made."

*Held:* The statement contained in the petition is not the same in substance
as that required by the statute, and for this reason the petition of the
freeholders did not give power or jurisdiction to the Council.

JURISDICTION.—It was not the intent of the statute that the City Council
should itself conclusively determine its own power, and the adoption by
the Council of the "final resolution of determination" to make the im-
provement did not conclusively adjudge that the petition of the free-
holders was sufficient to give the Council power to proceed upon it.

DETERMINATION OF BOARD AS TO JURISDICTION.—An inferior Board may
determine conclusively its own jurisdiction or power by adjudicating the
existence of facts upon the existence of which its jurisdiction or power
depends. When, however, the power depends not upon the existence or
non-existence of matters *in pais* to be established by evidence, but upon
allegations in a petition—a portion of the record—the question is not the
same. The petition of the City Council to the County Court affirmatively
shows that the proceedings taken before the Council are invalid and gave
the County Court no jurisdiction.

OBJECTION TO JURISDICTION MAY BE TAKEN AT ANY TIME.—The objection to
the jurisdiction of the County Court was properly taken, and could have
been taken at any stage of the proceedings in that Court or for the first
time in this Court on appeal.

APPEAL by contestants from the judgment of the County
Court of the County of Alameda. REDMAN, J.

Proceeding for the condemnation of land for opening and
extension of a street in the City of Oakland.

The City Council, under an Act of the Legislature entitled
"An Act to provide for the opening of streets in the City of
Oakland," approved March 28, 1878, filed in the County
Court of the County of Alameda on the thirteenth day of

January, 1879, a petition praying the appointment of three
Commissioners to assess the compensation · to be paid to the
several owners of the land sought to be condemned and taken
for the opening and extension of a street called Grove Street
in the City of Oakland, and to make the assessment against
the lands lying within the district to be benefited by the im-
provement, for the costs thereof. The Court appointed the
Commissioners, and they subsequently made their report to
the Court.

When the report came on for hearing the appellants, H. K.
Masten, Francis Blake, J. W. Knox, A. C. Henry, G. J. Mitch-
ell, F. H. Brooks, F. B. Haswell, Elijah Higham, A. C. Brown,
I. J. Jacoby, and the Central Land Company, appearing for
the first time, severally filed their objections in writing to the
confirmation of the report and moved to quash all of the pro-
ceedings, upon the grounds, among others, that the petition
to the City Council, and upon which the proceedings to open
and extend Grove Street were founded, was defective and
void in that it does not comply with the statute in that be-
half; it does not contain a statement that, in the opinion of
the petitioners, the public interests requires or required that
the improvement asked for should be made; in that said pe-
tition describes two improvements, and as to one of said im-
provements said petition does not contain a statement that in
the opinion of the petitioners the public interests require that
the same should be made. And also, that the County Court
never acquired jurisdiction of the proceeding. The Court
overruled all objections, and gave judgment confirming the
the report of the Commissioners and condemning the land.
Other facts are stated in the opinion of the Court.

*McAllister & Bergin*, for Appellants.

1. The rule is axiomatic, that proceedings in exercise of
the right of eminent domain, must be strictly pursued. (*Har-
beck* v. *Toledo*, 11 Ohio St. 222; *Bensley* v. *Mountain Lake
Water Co.*, 13 Cal. 315; *Curran* v. *Shattuck*, 24 id. 432.)

2. The petition to the Council, with the prescribed aver-
ments is indispensable. (*Matter of Marsh*, 71 N. Y. 318;
*Miller* v. *Brown*, 56 id. 386.) Failure to object to a void
proceeding does not render it valid. (*People* v. *Judges of*

*Suffolk,* 24 Wend. 254; *Miller* v. *Brown,* 56 N. Y. 386.) Nor can an express adjudication of the validity of such void proceedings render them valid. (*In the Matter of widening Carlton Street,* 16 Hun, (N. Y.) 501; S. C., 78 N. Y. 362; *Doughty* v. *Hope,* 1 N. Y. 79; *Middleton* v. *Low,* 30 Cal. 607.)

3. The petition to the County Court should have affirmatively shown jurisdiction in the Council in order to authorize that tribunal to entertain jurisdiction.

It fails to do this in the following particulars: 1. The petition to the Council, as alleged is fatally defective, in that it did not state " that in the opinion of the petitioners, the public interests require that the improvement should be made." This is an essential averment. Upon it alone is exercise of the power of eminent domain based. (*Land Association* v. *Topeka,* 20 Wall. 661; *Pryor* v. *Downey,* 50 Cal. 398.) 2. The resolution as alleged determined the district of lands to be benefited instead of the lands to be benefited, and it failed to order a survey as required by Section 4.

4. There was nothing in the action of the Court in appointing the Commissioners to preclude inquiry into its jurisdiction, as well as the jurisdiction of the Council, and upon suggestion, it was the duty of the Court to make such inquiry. (*In the Matter of Carlton Street,* 16 Hun, (N. Y.) 497; S. C., 78 N. Y. 362.) There is an acknowledged distinction between irregularities and absence of jurisdiction. (*Matter of Second Avenue Church,* 66 N. Y. 400.)

*J. M. Poston* and *W. H. & J. R. Glascock,* for Respondent.

1. Counsel for appellants contends that: "The petition to the City Council is fatally defective in that it did not state 'that in the opinion of the petitioners the public interests require that the improvement should be made;'" and cites in support: *Land Association* v. *Topeka,* 20 Wall. 661; *Pryor* v. *Downey,* 50 Cal. 398. These authorities are not in point.

A petition may be necessary to set the municipal machinery in motion; but we deny that the Legislature has given, or can give, to one or five men the power to decide upon the necessity or expediency of a municipal improvement. That power lies in the municipal corporation. The omission complained of is not therefore a jurisdictional defect, but one

which should have been taken advantage of by special de-
murrer. In this connection the authorities cited by appellant:
*Matter of Marsh*, 71 N. Y. 318; *Miller* v. *Brown*, 56 id. 386;
are not applicable and are answered by: *Hagar* v. *Supervisors
of Yolo Co.* 47 Cal. 228, and *People* v. *Hagar*, 52 id. 171.

2. Another of appellants' points is to the effect that "there
is nothing in the action of the Court in appointing the Com-
missioners to preclude inquiry into its jurisdiction as well as
the jurisdiction of the City Council; and, upon suggestion, it
was the duty of the Court to make such inquiry.

"There is an acknowledged distinction between irregular-
ities and absence of jurisdiction." Citing, upon the first prop-
osition: *In the Matter of Carlton Street*, 16 Hun, (N. Y.) 497;
Same case, 78 N. Y. 362; and upon the latter: *Matter of
Second Avenue Church*, 66 N. Y. 400.

The latter proposition is of course admitted. Upon the
first proposition we claim that the authority cited from 78
New York is not pertinent to the present position of this pro-
ceeding under the peculiar provisions of the Act under which
it was instituted. The plan and theory of the New York
statute differs radically from our statute.

The points of difference between this statute and the Cali-
fornia Act are:

1. Under the New York Act the Council has jurisdiction of
the matter first and last; and the proceedings before the Court
of record are interjected simply as a portion of the machinery
necessary to enable the Council to levy the assessment. Un-
der the California Act, upon filing its petition before the
County Court, the Council thenceforward loses jurisdiction
over the matter. The proceedings before the Council are
matters of inducement to the petition to the County Court.
This petition, under the Act, confers jurisdiction upon the
County Court. (Cal. Stats. 1878, p. 616, § 10.)

2. Under the New York Act the Court of record has before
it certified copies of the resolutions of the Council, together
with proof of service of notices, and can determine from them
whether or not jurisdiction has been acquired.

Under our Act the Court had the petition which the statute
requires must recite all the proceedings had in the premises,
etc. The petition, not the proceedings before the Council,

was the basis of the Court's jurisdiction. A hearing was given by the Court to parties interested, at which the petition could have been demurred to or answered. Evidence *aliunde* the record could have been introduced. In the absence of these steps the Court was bound by the petition. It had no authority to compel the Council to certify up its proceedings. The Council was an independent tribunal, and within the scope of its powers, was in nowise subordinate to the County Court. The only manner by which the Court could review the proceedings of the Council (aside from the recitals of the petition) was through evidence offered by interested and contesting parties. Can they be heard, collaterally, to complain of their own laches?

3. The New York Act gave the contestants, in terms, no " day in Court." Motion to set aside or appeal was their only remedy. They were not guilty of laches. The California Act gave a day in Court before the Council, and one before the County Court on appointment of Commissioners, besides a final day on the confirmation of the report of Commissioners. But we submit that upon this final hearing objections could be raised only to matters transpiring subsequent to the filing of the petition in the County Court for reasons already stated in this reply and in our brief on file.

4. The New York Act provides for personal as well as constructive notice to parties interested. Our Act calls for constructive notice alone.

5. The New York Act makes the order confirming the report of the Commissioners " conclusive upon the City Council, upon owners, and all persons interested in the lands." The appeal in the case cited from 78 N. Y., under the rulings of this Court, should have been dismissed. (*Appeal of Houghton*, 42 Cal. 35.) Besides, as offsetting said case in 78 N. Y. (upon similar state of facts), we cite : *Young* v. *St. Louis*, 47 Mo. 492; as exemplifying the tendency of modern Western jurisprudence to rise above the region of technicality, and give a broader and more equitable sweep to rules of construction. In proceedings to condemn a strict compliance with the statute has been held to mean a substantial strict compliance. The case in 78 N. Y. is not in point.

We submit that the effort made on this appeal is to collat-

erally attack what is, in effect, a judgment of the County Court; and that this can not be done. The appeal is from the order confirming the report and from an interlocutory (not final) judgment of the County Court, and it is contended that the order of the County Court adjudging its own jurisdiction and appointing commissioners is void for want of jurisdiction.

Grant, for argument's sake, that the County Court, though a Court of general jurisdiction, was acting outside of the scope of its general duties upon a special proceeding, and that its jurisdiction must appear upon the face of its records. What are its records? the petition of the Council; the order appointing a day for hearing same; proof of due notice; and the order adjudging regularity of the proceedings and appointing commissioners. These papers would constitute the judgment roll on appeal from said order. The appeal from the order is given by the State and virtually admitted by contestants. What error showing lack of jurisdiction have contestants pointed out in this record? The jurisdictional defects of which they now complain, they, and they alone, could have presented to the County Court at said hearing to go behind the records of the County Court and show that its action in appointing commissioners was void. This can not be done. The action of the County Court, based upon a good and sufficient record, could only be attacked on appeal or by direct proceedings to set aside. This order was a judgment. (*Spriggs' Estate*, 20 Cal. 121). The recitals therein were conclusively on the parties. (*Reily* v. *Lancaster*, 39 id. 354.)

It is true that this line of cases depends upon *Hahn* v. *Kelly*, 34 Cal. 391, but we do not understand that *Hahn* v. *Kelly* has been overruled except in regard to constructive notice to non-resident defendants. If it be contended that the case of *Spriggs' Estate* (*supra*) is controlled by *Pryor* v. *Downey*, 50 Cal. 388, it must be remembered that probate proceedings are instituted and ended before one Court. The Court always has its records before it, open to inspection, and can determine at any time whether jurisdiction has been obtained.

In the case at bar, jurisdiction was conferred by law upon the County Court upon filing a petition, etc. The records of the County Court do not antedate the petition; and the

County Court has, of right, no recourse to prior proceedings. We submit that, under the peculiar provisions of our Act, appellants in this proceeding are bound by the record of the County Court, and are precluded from inquiry into the proceedings before the City Council.

McKinstry, J.:

The proceedings to be examined purport to have been taken under the Act of March 28, 1878, "to provide for the opening of streets in the city of Oakland." (Statutes 1878, p. 614.) The second and third sections of the Act provide that such proceedings shall be commenced by petition of five or more residents and freeholders within said city, addressed to the City Council; the petition to contain, amongst other statements, "a statement that, in the opinion of the petitioners, the public interests require that the improvement asked for (describing it generally) should be made."

The fourth, fifth, sixth, seventh, and eighth sections of the Act of March 28, 1878, are as follows:

"Sec. 4. At the regular meeting next after the meeting at which the petition is presented to the Council, or at any subsequent meeting to which the proceedings may be regularly adjourned, the said Council may, by resolution duly passed, determine the lands to be benefited by the improvement asked for in the petition, and to be assessed for the expenses thereof. Said resolution shall contain a description of each lot, piece, or parcel of land necessary to be taken and condemned for such improvement, and shall also specify the exterior boundaries of the district of lands benefited thereby, and to be assessed therefor, and shall direct the city engineer to make a survey and map of the lands described in the resolution, a copy of which resolution shall be forthwith transmitted by the clerk of said Council to the said city engineer.

"Sec. 5. It shall be the duty of the city engineer, immediately upon receiving a copy of the resolution mentioned in section four, to survey the lands described in said resolution and make a map thereof, and to return said map to said Council within twenty (20) days from the receipt by him of said copy of the resolution; said map shall show each piece, tract, or parcel of land necessary to be taken and condemned for

said improvement, and also the exterior boundaries of the district to be benefited by such improvement and to be assessed on account of the cost and expenses thereof, as declared in the resolution, and the area thereof, exclusive of public streets and alleys. Said city engineer shall have the right to enter upon the lands and make examinations and surveys thereof, and such entry shall constitute no cause of action in favor of the owners of lands, except for injuries resulting for negligence, wantonness, or malice.

"Sec. 6. The Council, at its regular meeting next after the return of the map by the city engineer, shall pass a preliminary resolution, declaring the intention of the corporation to make the improvement asked for in the petition. Said resolution shall contain a description of each piece, lot, or tract of land necessary and sought to be taken and condemned for the improvement, and also the exterior boundaries of the district of lands to be benefited thereby, and assessed for the expenses thereof; the resolution shall also specify a time, not more than fifteen (15) days from the passage thereof, for the hearing by said Council of objections to the proposed improvement, and said resolution shall be published in at least one daily paper printed and circulated in said city of Oakland, daily (Sundays and non-judicial days excepted), for at least ten (10) days prior to the time fixed for said hearing.

"Sec. 7. If a majority of the owners of the lands in area to be assessed for the expenses of said improvement shall, on or before the day fixed by said resolution for the hearing of objections, appear and protest against said improvement, the proceedings shall be discontinued; *provided, however*, that such protest must be in writing, and shall contain a description of the land claimed by each protestant; and, *provided further*, that the Council may, by a unanimous vote of all its members approved by the Mayor, proceed to cause such improvement to be made, notwithstanding such protest.

"Sec. 8. If the owners of a majority in area of the property to be assessed for the expenses of said improvement, fail to appear and protest as provided in Section 7, or if the Council, by a unanimous vote, approved by the Mayor, order said improvement to be made, said Council must immediately pass a final resolution declaring such determination. Such resolu-

tion shall refer to the preliminary resolution, mentioned in
Section 6, by its number, for a description of the lands neces-
sary and sought to be taken and condemned for said improve-
ment, and the district to be assessed for the expenses thereof."

The ninth section of the act provides that, immediately after
the passage of the final resolution above spoken of, the Coun-
cil shall apply to the County Court by petition for the ap-
pointment of three commissioners to assess compensation, etc.;
and that the petition of the Council "shall recite all the pro-
ceedings had in the premises, specify the exterior boundaries
of the lands sought to be taken, and the exterior boundaries
of the lands to be benefited," etc.   It further requires a copy
of the map made by the Engineer (previously provided for)
to be annexed to the petition.

The tenth section provides that the County Court "shall
take jurisdiction of the proceedings," and that the Judge
thereof shall by order fix a day for the hearing of the peti-
tion, and that notice of the time for hearing shall be published
for ten days.   It is required (eleventh section) that the notice
specify the exterior boundaries of the lands to be taken and
to be benefited; state that damages for property taken will
be determined, and that such damages, together with costs,
etc., will be assessed upon the lands benefited by commission-
ers appointed on the return day.

"Sec. 12. At the time fixed for the hearing, or at such other
time as the hearing may be adjourned to, the Court shall pro-
ceed to hear any party interested *touching the regularity of
the proceedings, and if satisfied that the proceedings have been
regular,* shall appoint three competent and disinterested Com-
missioners."   *   *   *   The thirteenth and fourteenth sec-
tions treat of the qualifications and duties of the Commis-
sioners, including the prescribed form and matter of their
*report* to the Court.   The fifteenth provides, that upon the
filing of the report of the Commissioners, the Court shall, by
order, fix a day for hearing objections to the confirmation
thereof, and shall direct notice of the time and place of said
hearing to be given, etc.

"Sec. 16. Upon the day fixed for the hearing, the Court
shall proceed to hear any party interested *upon any question
touching the regularity of the proceedings,* the sufficiency of

the compensation awarded, or the justice or equality of the assessment, and may *confirm said report, or set the same aside, or remand* the same for correction or alteration in any particular;" etc.

The other sections of the Act relate to the compensation of the Commissioners, the entry of a judgment, and its enforcement.

We agree with counsel for the respondent, that the Act under consideration "naturally divides itself into three parts: 1. Proceedings of Commissioners and City Council up to 'final resolution of determination.' 2. Proceedings of Council and County Court, up to and including appointment of Commissioners. 3. Subsequent proceedings of Commissioners and County Court."

It is urged by counsel for respondent that ample opportunity, upon due notice, is afforded, by the statute, for all who object to the proceedings to be heard. It is said: "Three several days in Court are accorded interested parties. 1. Before the City Council (under Sections 6 and 7.) 2. Before the County Court on appointment of Commissioners (Section 12.) 3. Before the County Court on confirmation of the report of the Commissioners (Section 16.)" And counsel argue that it was quite evident it was not intended the same objections could be raised at each of the three hearings, but was intended that the final resolution of the City Council should be determinative of the validity and regularity of the proceedings prior to such resolution, and that the appointment of Commissioners by the County Court should in like manner be a final adjudication of the validity and regularity of the proceedings which preceded the appointment.

If it were intended that the action of the City Council should be conclusive, the requisite that its petition to the County Court must "recite all the proceedings had in the premises," would subserve no useful purpose. A presentation of the resolution of the Council, together with the map, or a description of the lands to be taken, and of the lands benefited, would be all that would be necessary to inform the County Court of facts necessary upon which to base its action.

But, by Section 10, the County Court "takes jurisdiction"

"only upon the filing of the petition mentioned in Section 9." The power of the City Council is itself limited, and if the petition to the County Court shows affirmatively that the Council had exceeded its power in passing the "final resolution" (so called), the County Court can not take jurisdiction. The requirement that the petition of the Council shall "recite all the proceedings had in the premises" is not complied with by the recital of any proceedings, however irregular or even *void*. So to construe it would be to fritter away the evident intent of the statute that the County Court should be informed that valid proceedings, culminating in a valid "resolution of determination," had been taken by the Council.

The record before us contains the petition of the City Council to the County Court, and the subsequent proceedings in that Court, including the confirmation of the report of the Commissioners, and the final judgment as provided for in Section 18 of the Act. The petition of the City Council is in the nature of a pleading, and if such petition is radically defective, it is clear the County Court acquires no jurisdiction to enter the judgment.

If the petition is radically defective, the point may be taken on appeal, although its defects were not pointed out by demurrer or objection below. The petition is radically defective if it appears on its face that the City Council did not acquire power to act by reason of the insufficiency of the petition presented to the Council—*a fortiori*, as the statute gave parties in interest no opportunity before the City Council efficiently to object to its insufficiency.

The third section of the Act requires the petition of the five or more residents and freeholders to the City Council to contain "a statement that, in the opinion of the petitioners, *public interests require* that the improvement asked for (describing it generally) should be made."

The averment in the petition of the City Council to the County Court is, that the petition of the residents and freeholders to the Council contained a statement, that, "in the opinion of the petitioners, the improvement asked for *should be made.*"

It may be said, it is enough if the freeholders express a desire that the street be opened or other improvement made;

this must be all required by the statute, since it must be presumed the Legislature has not attempted to give the power, power which it could not give, to five or more residents and freeholders, of deciding whether the "public interests require" a municipal improvement; in other words, its necessity or expediency.

But the statute does not purport to confer such power upon the petitioners. The fourth section of the Act provides, that, at the regular meeting next after the meeting at which the petition of the freeholders is presented, " the Council *may* by resolution determine the lands to be benefited," etc. Thus the ultimate power of determining the necessity and expediency of the work is placed in the City Council. The power, however, like every other power of the Council, is derived from the charter or statute, and can be employed only in the manner, and with the limitations prescribed in the statute. The statute authorizes the City Council to proceed with the acts looking to the opening of a street only after a certain petition shall be filed with the clerk. It was for the Legislature to prescribe, and the Legislature has prescribed, what the petition shall contain. Until a petition is presented containing substantially all that the law declares shall be inserted in a petition to initiate the proceedings, the Council has no power or jurisdiction to act with reference to the opening of a street.

A statement in a petition, that, in the opinion of the petitioners, an improvement "should be made," is not in substance the same as a statement that, in the opinion of petitioners, " *the public interests require* the improvement should be made."

And here it may be urged, inasmuch as an "improvement" *ought* not to be made, except when " the public interests" require it, that the statement of petitioners of their opinion, " the improvement should be made," necessarily includes an expression of their opinion that the public interests require it. But while the petitioners *ought* not, perhaps, to indulge an opinion that the improvement should be made, because their private interests may be subserved by it, such, nevertheless, may be their opinion. At all events, the authority of

CAL. REPS. LXI—29

the City Council to proceed depends upon a statement in the petition, which statement, or its substantial equivalent, is not averred to have been in the petition. Proceedings, *in invitum*, by which the property of the citizen is to be taken or assessed, are to be strictly construed. This rule is fundamental and imperative. (Cooley on Taxation, 464, and cases cited.)

Thus, on the face of the petition of the City Council to the County Court, it appears that the Council never was authorized by sufficient petition to proceed with reference to the opening of Grove street, or to pass the "final resolution of determination." As a consequence, the petition of the City Council is radically defective, and does not support the judgment of the County Court.

Returning to the points of counsel for respondent, it is by them claimed, that the appointment of Commissioners by the County Court is a final and conclusive adjudication of the validity and regularity of the proceedings prior to such appointment, determinative, amongst the rest, of the sufficiency of the petition of the City Council. Passing the question, whether a court employing a statutory jurisdiction, special and limited, which can be exercised only upon the presentation of a certain petition, can ever conclusively give itself jurisdiction when no petition (or a totally insufficient one) has been filed or presented, it is enough to say that the statute we are considering does not pretend to confer the power upon the County Court of finally determining the sufficiency of the petition of the City Council. Nor is there anything in the nature of the case which demands that we should recognize the appointment of Commissioners as a final adjudication both of the validity and regularity of the previous proceedings. As we have already seen, the record before us consists of the petition of the Council to the Court, and of further proceedings in the Court, culminating in a statutory judgment. The petition is the complaint, which, if radically defective, may be objected to at any time. By failing to demur to it, or to object to its sufficiency, appellants did not make that sufficient which was radically defective.

It further and distinctly appears it was the intention of the Legislature that the appointment of Commissioners should

not be finally determinative of the validity and regularity of the prior proceeding, from the circumstance that an *appeal* is given to this Court. "Any party feeling aggrieved by *any* of the proceedings, orders, or judgments under this Act, may appeal to the Supreme Court, *as in other cases.*" (Sec. 25.)

In "other cases" (with the single exception of suits for a partition of real estate, where an appeal from a certain decretal order is given in express terms), the appeal can be taken only from the ultimate judgment, which finally disposes of the rights of all the parties, leaving nothing to be done for the disposition of such rights in the Court of original jurisdiction. By the twenty-fifth section of the Act we are considering, no appeal is granted from the order or judgment appointing Commissioners, but the party feeling aggrieved by such order or judgment may have the same reviewed on an appeal from the final judgment.

If we are correct in holding that the petition of the City Council is radically defective and gave the County Court no jurisdiction to proceed to the appointment of Commissioners, the interpretation of the sixteenth section of the Act becomes comparatively unimportant. The words of that section, which give to every party interested a right to be heard " upon any question touching the regularity of the proceedings," are of themselves broad enough to give to each party interested a right to object to proceedings taken prior to the appointment of Commissioners.

It is insisted by respondent, however, that when these words are read in connection with those which declare the order or judgment of the County Court, to follow in case the objections are sustained (" the Court may set the report aside or remand the same for correction or alteration in any particular,") and with the last sentence of the same section (" *if the report be set aside*, the matter may, in like manner, be referred to the same or new Commissioners appointed by the Court, who shall proceed as hereinbefore provided,") it is apparent the only objections which may be taken under the sixteenth section are objections to the conduct and report of the Commissioners. But, even if it be conceded that by its terms the sixteen section authorizes objections to the conduct and report of the Commissioners alone, an objection to the

sufficiency of the petition of the City Council, upon whose averments depends the jurisdiction of the County Court, could be taken on the day fixed for confirming the report of the Commissioners, or at any other day during the pendency of the proceedings.

We have said the petition of the City Council affirmatively shows that the petition presented by freeholders did not give the Council power to take any step toward the opening of Grove Street. The objection, therefore, appeared on the face of the petition of the Council, and was in the nature of demurrer. But, if the petition of the Council had recited a freeholder's petition sufficient in form and substance, and other proceedings regularly conducted, "any party interested" might have objected, by way of answer, that the averments of the petition of the Council were not true. There can be no doubt that the finding of the County Court, upon issues of fact thus raised, would be subject to review (through bill of exceptions) on appeal from the final judgment of the County Court. (§ 25.) If the averments of the petition of the Council showed all proceedings before that body to have been valid and regular, it *may be* that a party interested would lose all right to dispute such averments by failing to appear at the time fixed for the appointment of Commissioners. Here, however, the petition shows on its face that the City Council had no power to do any act looking to the opening of the street.

It is strenuously urged by respondent that the power of the City Council has been conclusively determined by the Council itself; that we are estopped by the "final resolution expressing the determination" to make the improvement from inquiring into the sufficiency of the freeholders' petition, because all parties in interest had an opportunity to object before such resolution was passed by the Council.

From what has already been said with reference to the recitals in the petition of the Council to the County Court, and the contemplated action of that Court upon such petition, it would seem reasonably clear that it is not the intent of the statute that the City Council should itself conclusively determine its own power. It may be added, the individuals in in-

terest are given by the statute no opportunity to object before the Council.

It will be observed that while the sixth section requires the preliminary resolution of intention to make the improvement, the seventh section does not authorize any less than the owners of a majority in area of the lands to be assessed for expenses to "protest," and does not authorize the owners of property *taken* to protest at all. Further, notwithstanding a protest, the Council may by unanimous vote, with the approval of the Mayor, proceed to cause the improvement to be made.

And, by the eighth section, if the owners of a majority in area of the property to be assessed fail to appear and protest, the Council must immediately pass a final resolution declaring its determination that the improvement be made.

Each person whose property is to be taken, and each person whose property is to be assessed to pay for the property taken, is affected by, and interested in, the sufficiency of the petition, and without a sufficient petition the Council has no authority to pass a resolution expressing its determination to proceed with the improvement. When the Council, by reason of a proper petition, has acquired jurisdiction over all persons and property in interest, it may go on with the improvement, unless a protest is made by the owners of "a majority in area" of the property to be assessed, and may, by unanimous vote and the approval of the Mayor, go on with the improvement notwithstanding the protest. Thus as against the owners of a "minority" in area of the property to be assessed, and as against the owners of the property taken or condemned, the proceedings of the City Council as prescribed by the statute are *ex parte*. If a petition had been filed which gave to the City Council power to proceed, the fact that the proceedings of the Council were *ex parte* would not (perhaps) render the law unconstitutional. But how can it be said the parties in interest had an opportunity *to object* to proceedings taken *ex parte?*

An inferior board may determine conclusively its own jurisdiction or power by adjudicating the existence of *facts*, upon the existence of which its jurisdiction or power depends. Where, however, the power depends, not upon the existence

or non-existence of matters *in pais*, to be established by evidence, but upon allegations in a petition, a portion of the record, the question is not the same.

But even if it be admitted that the judgment of the City Council would have determined the sufficiency of the petition, and the power of the Council to proceed upon it, as against those given an opportunity to appear and object, the scheme of the statute affords no opportunity to the individual owners of property, to be taken or assessed, to object to the sufficiency of the petition before the *Council*. As we have seen, the statute requires no notice to each party in interest, upon which *he* can be heard in opposition to the "final resolution" of the City Council. How can a law be said to give one person (or more than one, the owners of less than a "majority in area") a hearing, when, by its terms, his being heard at all depends upon the action of others who, with himself, represent the ownership "of a majority in area" of the property to be assessed; when, if he happen to be an owner of property which the proceedings will deprive him of entirely, he can not be heard at all; and when the same law declares that the Council, by unanimous vote, may assess him notwithstanding any objection he may make.

To recapitulate: 1. The petition of the freeholders did not give power or jurisdiction to the Council. 2. The "final resolution of determination" did not conclusively adjudge that the petition was sufficient to give the Council power to proceed upon it. 3. The petition of the City Council to the County Court affirmatively shows that the proceedings taken before the Council are invalid, and gave the County Court no jurisdiction. 4. The objection to the jurisdiction of the County Court was properly taken, and could have been taken at any stage of the proceedings in that Court, or, for the first time, in this Court on appeal.

Judgment reversed.

MORRISON, C. J., and SHARPSTEIN, MYRICK, ROSS, and THORNTON, JJ., concurred.