[S. F. No. 4078. In Bank.—February 8, 1905.]

## JAMES G. GRANNIS, Petitioner, v. SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, and JOHN HUNT, Judge, Respondents.

DIVORCE—VOID FINAL DECREE—MODIFICATION—POWER OF COURT—PRO-HIBITION.—A final decree of divorce entered without a previous interlocutory decree, since the enactment of the law requiring the entry of interlocutory decrees, is void upon its face so far as it is final; and the court has power after the lapse of more than one year thereafter to modify it by vacating so much thereof as awards an absolute decree, without affecting the decree in so far as it may determine that the plaintiff is entitled to a divorce. Prohibition will not lie to prevent such order or further proceedings thereunder.

ID.—PUBLIC POLICY—INTEREST OF STATE—LAW NOT TO BE WAIVED—COLLATERAL ATTACK UPON JURISDICTION.—In view of the public policy and interest of the state in the matter of marriage and divorce, and the fact that a divorce depends upon legislative grant and is subject to the legislative will, it is not competent for the parties to a divorce proceeding to waive the law restricting the power of the court to enter a final decree of divorce; and the question being one of law purely, and not of fact, the jurisdiction of the court over the subject-matter of such final decree is always open to collateral attack.

ID.—POWER OF LEGISLATURE—JURISDICTION OF DIVORCE—REGULATION OF PROCEDURE.—The legislature has not assumed to destroy the constitutional grant of jurisdiction in cases of divorce, but it has power to make reasonable regulations as to the proceedings by which such jurisdiction is exercised and to prescribe the terms and conditions on which a divorce may be granted, and the provisions upon the subject of interlocutory and final decrees are not unconstitutional.

PETITION for Writ of Prohibition to the Superior Court of the City and County of San Francisco. John Hunt, Judge.

The facts are stated in the opinion of the court.

Galpin & Bolton, for Petitioner.

A. P. Van Duzer, for Respondents.

SHAW, J.—This is a proceeding in prohibition to prevent the superior court of San Francisco from acting upon a motion pending before it to modify a judgment.

On June 25, 1903, an action for divorce, in which Amelia B. Grannis was plaintiff and James G. Grannis was defendant, was regularly tried by the superior court, and on July 1, 1903, said court rendered and entered its judgment in said action purporting to grant an absolute and immediate divorce to the plaintiff. The decree as entered was signed by the judge, and the decree proper was preceded by a recital that it appeared to the court "that all the allegations contained in the plaintiff's complaint are true," except certain facts not material. There were other recitals which were equivalent to special findings as to the amount of the community property and as to the children, which are immaterial to the consideration of the present case. The portion of the entry constituting the judgment of divorce was as follows:—

"It is now, therefore, ordered, adjudged and decreed as follows, to wit: That the marriage between the plaintiff, Amelia B. Grannis, and the defendant, James G. Grannis, be dissolved, and the same is hereby dissolved, and said parties are, and each of them is, freed and absolutely released from the bonds of matrimony existing between them, and all the obligations thereof." Other provisions of the decree disposed of the property and the custody of the children.

Proceedings on appeal and motion for new trial having terminated without effect, the plaintiff on August 31, 1904, more than a year after the judgment, served on the defendant notice of a motion to set aside the portion of the decree above quoted, on the ground that it was void, it being in form and effect a final judgment of divorce instead of the interlocutory judgment prescribed by the act of 1903. In pursuance of this notice, plaintiff, on September 2, 1904, presented the motion to the court, and the court, against the defendant's objections, declared its intention to determine said motion and to make an order, to quote its own language, "that so much of said decree as awards to the said plaintiff an absolute decree is hereby vacated and set aside; but said decree, in so far as it may determine that the plaintiff is entitled to a divorce, shall be in no way modified or affected by this order." The object of the present proceeding is to prevent the superior court from making the order, or from further proceeding in pursuance of the motion.

The contention of the petitioner is, that the judgment en-

tered by the court on July 1, 1903, was both in form and effect a judgment of absolute divorce, and that as proceedings for new trial and on appeal have ended, and more than six months had elapsed at the time proceedings on the motion were begun, the superior court has no power to modify or vacate it.

After proceedings to vacate or modify a judgment on motion for new trial, or an appeal, or under section 473 of the Code of Civil Procedure, are ended, and the time therefor has expired, the superior court has no power or authority to vacate or modify its judgment in a matter of substance on account of judicial error in the decision, no matter how apparent such error may be on the face of the record. Its power thereafter is limited to the correction of mere clerical misprisions on the record, or to the excision of such parts of the record as appear to be, or can be shown to be, void for lack of jurisdiction or power. (*Egan* v. *Egan*, 90 Cal. 15, 20; *Jacks* v. *Baldez*, 97 Cal. 91; *Norton* v. *Atchison etc. R. R. Co.*, 97 Cal. 390.[1]) The modification proposed to be made herein is not the correction of a clerical error, but goes to the substance and effect of the judgment.

Under these circumstances the superior court has no power to make the order in question, unless the judgment proposed to be so modified is absolutely void as a final judgment. When the judgment was rendered the court had jurisdiction of the subject-matter in general and of the parties. The general rule is, that, under such circumstances, a judgment, however erroneous, is not void. It must be conceded that the court cannot make this order unless, by the legislation of 1903 (Stats. 1903, pp. 75, 76, 176) amending section 61 of the Civil Code and adding thereto sections 131 and 132, the court is divested of power to enter a final judgment granting a divorce until it has first entered an interlocutory judgment declaring a party entitled to a divorce, and an interval of one year has passed thereafter before such final judgment.

The provisions of the code must be construed with a view to effect its objects (Civ. Code, sec. 4), and when the language used is not entirely clear, the court may, to determine the meaning, and in aid of the interpretation, consider the spirit, intention, and purpose of a law, and to ascertain such

---

[1] 33 Am. St. Rep. 198.

object and purpose may look into contemporaneous and prior legislation on the same subject and the external and historical facts and conditions which led to its enactment. (26 Am. & Eng. Ency. of Law, 601, 602, 603, 623-624, 632.)

The institution of marriage is an important feature of civilization, and its preservation is essential to the maintenance of organized society. As was said in *Deyoe* v. *Superior Court*, 140 Cal. 482,[1] "In every civilized country marriage is recognized as the most important relation in life, and one in which the state is vitally interested. . . . The well-recognized public policy relating to marriage is to foster and protect it, to make it a permanent and public institution, to encourage parties to live together, and to prevent separation and illicit unions." Owing to the strength of human passions and the weakness of human nature the regulation and preservation of the institution of marriage and the prevention of the abuse of the right of divorce have always been one of the most difficult problems of government. It has been considered essential to the promotion of happiness and the good order of society to provide that for certain offenses against marital rights the innocent party could, under fixed restrictions, have the marriage dissolved by judicial decree. But it has been found that this right is often abused; that by collusion and fraud, by fabricated testimony, or by the exaggeration of trifling offenses, divorces are obtained which should not have been granted; that when the procedure is easy and speedy slight causes are magnified and made the pretext for hasty divorces, and that too frequently actions for divorce are not prompted by the necessity of relief from marriage bonds which, by the fault of the other party, have become the cause of misery and suffering, but are inspired by a desire to become free from the old obligations in order to make a new alliance. It has also been found that in some cases difficult complications occur, arising from divorced persons contracting a subsequent marriage before the judgment of divorce became final by the expiration of the time within which an appeal could be taken. To prevent or mitigate these evils it has always been the legislative policy to make many restrictions in the procedure in divorce cases which are not applicable in ordinary actions.

[1] 98 Am. St. Rep. 73.

In continuation of this policy the legislature in 1897 amended section 61 of the Civil Code so as to provide that a marriage contracted by a divorced person during the life of the former spouse, and within one year after the time of the judgment in divorce, should be illegal and void. (Stats. 1897, p. 34.) Immediately it was contended that this law was of no effect beyond the confines of the state, and that marriages solemnized during the year after the divorce within another state or territory, which were valid by the laws of such state or territory, must be recognized as valid in this state. Numerous attempts thus to evade the law were made, and much difference of opinion existed as to the legality of such marriages, until finally, in August, 1902, it was decided by this court that such marriages were valid in this state, and the question was thus settled. (*Estate of Wood*, 137 Cal. 130.) Thereupon the act of 1897 became practically a dead letter. All who wished to enter into another marriage within the year easily accomplished their purpose and evaded the law by a short journey beyond the borders of the state.

At its next ensuing session the legislature passed the acts making a second amendment to section 61, and adding the new sections as above mentioned. By the last amendment to section 61 it was provided, with respect to a second marriage to a different person during the life of a former spouse, that ''In no case can a marriage of either of the parties during the life of the other be valid in this state, if contracted within one year after the entry of an interlocutory decree in a proceeding for a divorce.'' The new sections 131 and 132 are as follows:—

''131. In actions for divorce the court must file its decision and conclusions of law as in other cases, and if it determines that no divorce shall be granted, final judgment must thereupon be entered accordingly. If it determines that the divorce ought to be granted an interlocutory judgment must be entered, declaring that the party in whose favor the court decides is entitled to a divorce, and from such interlocutory judgment an appeal may be taken within six months after its entry, in the same manner and with like effect as if the judgment were final.

''132. When one year has expired after the entry of such interlocutory judgment, the court on motion of either party,

or upon its own motion, may enter the final judgment granting the divorce, and such final judgment shall restore them to the *status* of single persons, and permit either to marry after the entry thereof; and such other and further relief as may be necessary to complete disposition of the action; but if any appeal is taken from the interlocutory judgment or motion for a new trial made, final judgment shall not be entered until such motion or appeal has been finally disposed of, nor then, if the motion has been granted or judgment reversed. The death of either party after the entry of the interlocutory judgment does not impair the power of the court to enter final judgment as hereinbefore provided; but such entry shall not validate any marriage contracted by either party before the entry of such final judgment, nor constitute any defense of any criminal prosecution made against either.''

The manifest purpose of these several amendments was to avoid the effect of the decision in *Estate of Wood*, 137 Cal. 130, by going a step further than the law of 1897. That law simply prohibited a remarriage within one year, and made such marriage illegal and void, if made within this state, but it did not affect the procedure in an action for a divorce nor the validity or effect of a judgment therein. The law of 1903 acts upon the proceeding and upon the judgment, and secures the same period of delay as the former act, by providing for a delay in the entry of final judgment dissolving the marriage for at least one year after the trial and interlocutory judgment in the action. It thus presents the same obstacle to speedy divorces, the same opportunity for reflection and reconciliation, and the same check to collusion and fraud, and in the mean time it effectually prevents a subsequent marriage with another person by the simple provision that the former marriage, during the interval, shall remain undissolved. The ultimate object, of course, was to reach and mitigate the same evils to which the act of 1897 was directed.

For a time after this act took effect there was some difference of opinion among the judges of the superior courts with respect to its validity, several of them holding it unconstitutional and granting what purported to be immediate final judgments of divorce in disregard of its provisions. The question was settled in favor of the validity of the law by this

court in *Deyoe* v. *Superior Court,* 140 Cal. 482.[1]  In the mean time, however, a number of so-called final judgments had been entered, among them the one here involved.

It is obvious that the entire purpose of this legislation will be practically defeated if the law receives a construction which will enable the courts at the request, or with the consent, express or implied, of the parties, or either of them, to give final judgment immediately upon the trial, and without a previous interlocutory judgment.  In order to reach this conclusion the law must be held to be merely directory in this respect and the disregard of it a mere error not affecting its validity except upon appeal, or in some form of direct attack. The departure from the prescribed order of proceeding, with the consent or acquiescence of the parties, must be considered as an irregularity which is waived, and the giving of an immediate final judgment held an error, which, whether expressly waived or not, can be effectively cured and the judgment placed beyond attack, by the mere failure to appeal.  Persons seeking or submitting to a divorce for the purpose of entering into another marriage, or in collusion for any improper purpose, will request, consent to, or acquiesce in an immediate final judgment, many cases will occur in which it will seem a harmless deviation from the strict course of procedure, the matter will seem unimportant, and the desire or request of the parties, or the seeming necessities of exceptional cases, will prevail, and final judgments will be immediately given.  It will soon become customary.  The evil-disposed persons, against whom alone the law is directed, will be the ones who will avail themselves of this opportunity to evade its true intent and purpose.

In view of these considerations we think that, if it is reasonably possible, the terms of the act should receive a construction calculated to make its object and purpose secure, and which will make it impossible for either party to contract another lawful marriage within a year from the time of the trial and interlocutory judgment.  The language is clearly susceptible of this construction, and the object and purpose to be accomplished make it necessary to reject any other construction.  It declares that "if it [the court] determines that the divorce ought to be granted an interlocutory judgment *must*

[1] 98 Am. St. Rep. 73.

be entered'' (sec. 131) and further that ''when one year has expired after the entry of such interlocutory judgment the court . . . may enter the final judgment granting the divorce, and such final judgment shall restore them to the *status* of single persons,'' and that if an appeal is taken from the interlocutory judgment, or a motion for a new trial is made, *''final judgment shall not be entered* until such appeal or motion has been finally disposed of'' (sec. 132), and by section 61 a subsequent marriage is made void if contracted within the year after the interlocutory judgment. These provisions, interpreted in the light of the previous legislation and decisions and the purpose to be accomplished by the law, are clearly to be understood as a limitation on the power of the court in the matter, and as intended to forbid the entry of a final judgment until after the prescribed period. The law can only be made effectual for the accomplishment of its object by holding that any final judgment purporting to grant the divorce is absolutely void if thus prematurely entered.

This conclusion receives additional support from a consideration of the nature of a proceeding for a divorce, and of the recognized public policy on the subject. The parties to such an action have not the right to control procedure as in other actions. The court is not bound by admissions in the pleadings nor by the stipulations of the parties, nor is its inquiry as to the facts limited by the pleadings. (7 Ency. of Plead. & Prac., 88, 121.) Nor can a divorce be granted solely upon the testimony or admissions of the parties. (Civ. Code, sec. 130; 9 Am. & Eng. Ency. of Law, 845.) The state is interested in the matter. In *Deyoe* v. *Superior Court,* 140 Cal. 482,[1] it is said: ''While an action to obtain a decree dissolving the relation of husband and wife is nominally an action between two parties, the state, because of its interest in maintaining the same unless good cause for its dissolution exists, is an interested party. It has been said by eminent writers upon the subject that such an action is really a triangular proceeding in which the husband and wife and the state are parties.'' (See, also, *McBlain* v. *McBlain,* 77 Cal. 507; *Warner* v. *Warner,* 100 Cal. 11; *Hatton* v. *Hatton,* 136 Cal. 356; *Newman* v. *Freitas,* 129 Cal. 292; 1 Nelson on Di-

[1] 98 Am. St. Rep. 73.

vorce, secs. 1, 7, pp. 2, 17.)   The rule in actions affecting property that the parties interested may control the disposition of the interests involved, and that the judgment of the court will be made to conform to such dispositions, when ascertained, has no application to divorce cases.   Hence it follows that in such cases there can be no effectual waiver by the parties of any restriction established by law for the benefit of the public or for the protection of the interest which the state has in the preservation and permanence of the marriage relation.   The provision forbidding the granting of a divorce solely upon the admission, stipulation, or testimony of the parties goes to the sufficiency of the proof, which is not ordinarily disclosed upon the record.   A disregard of this provision cannot be made to appear of record except upon appeal, and for this reason it cannot be made the subject of inquiry upon any collateral attack.   But on appeal, where such disregard appears, it is always held to be an act beyond the power of the court to do, or of the parties to sanction, and absolutely void.   The restriction now under consideration is of such a nature that a disregard of it must always be apparent upon the face of the record, and, consequently, the lack of power in the court will appear in every case upon an inspection of the record alone.

The rule invoked by the petitioner, taken in connection with the construction we have given to the act, would put the premature entry of final judgment of divorce in the class of errors which can always be reached on collateral attack.. *Tallman* v. *McCarty*, 11 Wis. 406, cited and relied on by petitioner, state the rule as favorably to him as any case that can be found.   The law of Wisconsin provided that in partition suits there should be an interlocutory judgment declaring the interests of the parties, that commissioners to make partition were then to be appointed, and upon the confirmation of their report the court was authorized to render a final judgment of partition.   Commissioners were appointed and final judgment rendered in accordance with their report, but there had been no interlocutory judgment.   On collateral attack in the above case the court held the judgment valid and said: "No order which a court is empowered, *under any circumstances,* in the course of a proceeding over which it had jurisdiction, to make, can be treated as a nullity merely because it was made improvi-

dently, or in a manner not warranted by law, or the previous state of the case. The only question in such a case is, had the court or tribunal the power, *under any circumstances,* to make the order or perform the act? If this be answered in the affirmative, then its decision upon those circumstances becomes final and conclusive, until reversed by a direct proceeding for that purpose.'' The italics are our own. It is to be observed that no question of public policy was there involved, and that the public had no particular interest in the decision of the case, nor was there anything in the statute governing the procedure in that case which could be construed as a restriction upon the ordinary powers of the court. In a partition suit the parties could agree as to their respective interests, could waive an interlocutory judgment and consent to the immediate appointment of commissioners, or even to an immediate final judgment, without any preliminary proceedings at all, without in any respect contravening public policy or transgressing restrictions made to protect the interests of society. The law in question in this case, as we have construed it, is a limitation upon the power of the court with respect to the subject-matter, so that the court shall not be competent to grant a final divorce at any time during the year succeeding the interlocutory judgment, and so as to require that the interlocutory judgment be first entered. The parties could not waive these proceedings, nor invest power in the court by their consent or acquiescence. The purpose of the statute is to provide that in any event and under all circumstances there shall be an interval of one year after the party is declared to be entitled to a divorce before it can become absolute. The question above stated cannot here be affirmatively answered. There can be no state of facts which will give the court power to enter final judgment immediately. Hence, upon the face of the record, and as a matter of law, the final judgment in question is, as a final judgment, without actual or possible authority, and is therefore necessarily void.

The cases holding judgments valid on collateral attack, although they may be necessarily founded upon an erroneous view of the law, are none of them cases in which the law which the court mistook was the law which vested the jurisdiction or power over the subject-matter in the court. So far as they

are cases involving jurisdiction of this class at all they are confined to instances where the jurisdiction over the subject-matter is by law made to depend on the preliminary determination of a question of fact. In that event a determination of the court rendering the judgment that the facts which give the jurisdiction exist is conclusive in all collateral inquiries. (*Farmers and Merchants' Bank* v. *Board,* 97 Cal. 328; *In re Grove Street,* 61 Cal. 438; *Cahill* v. *Superior Court,* 145 Cal. 42.) But where the question upon which the jurisdiction depends is one of law purely the jurisdiction over the subject-matter is always open to collateral inquiry. (*In re Grove Street,* 61 Cal. 438; *Arroyo D. and W. Co.* v. *Superior Court,* 92 Cal. 52;[1] *Cahill* v. *Superior Court,* 145 Cal. 42.) Mr. Freeman says: "When a tribunal has not jurisdiction over the subject-matter, no averment can supply the defect; no amount of proof can alter the case. As power over the subject-matter is given by law, nothing but an additional grant from the legislative authority can extend that power over a class of cases formerly excepted." (1 Freeman on Judgments, sec. 120.) And also, "If a court grants relief, which under no circumstances it has any authority to grant, its judgment is to that extent void." (Ibid., sec. 120c.)

It is contended that the law, if thus construed, would be unconstitutional. The constitution, it is said, confers upon the superior court full jurisdiction of actions for divorce, and the effect of this law would be to arrest the exercise of this jurisdiction, and suspend further action for one year, and if it can do this for one year, it must have power to suspend its action indefinitely, or absolutely, and for an unlimited time, and, if such power exists, the legislature may thus practically destroy or divest the jurisdiction given by the constitution. If it were necessary to the validity of this act to hold that the legislature has power to suspend absolutely the functions of the superior court the argument might have weight. We do not consider it necessary. It is sufficient to hold that the legislature has power to make reasonable regulations as to the proceedings by which the jurisdiction in such cases is exercised, and to prescribe the terms and conditions on which a divorce may be granted, and that in view of the subject-matter and purpose of the act, a provision for the post-

---

[1] 27 Am. St. Rep. 91.

ponement of final judgment for one year and a suspension of the power of the court to enter such judgment in the mean time, is not an unreasonable regulation of the procedure, and is within the legislative power to prescribe, as a condition necessary to the existence of the right to a divorce. The right to a divorce is subject to the legislative will, and exists only by legislative grant. The change in the method made by this law affects only the procedure and the right of the parties to an immediate divorce, and does not take jurisdiction from the court. The right to a divorce, not being inherent or constitutional, but statutory, the legislature could repeal the law and thus effectually prevent the granting of any divorces, or it could suspend the right for any number of years after the beginning of the action, without affecting the jurisdiction of the court. The legislature has complete control of the subject and may impose whatever restrictions or delays it pleases either in regard to the time for beginning the action, or the method and order of procedure after the action is begun. The grant of jurisdiction means only that such limited rights of divorce as the legislature provides are cognizable in the superior court under such system of procedure, and subject to such restrictions as may from time to time be established.

The judgment in question, being wholly void as a final judgment granting an immediate divorce, it was within the power of the superior court at any time, on motion of either party, or of its own motion, to declare it null, in so far as it purported to be of such effect. (*People* v. *Davis,* 143 Cal. 675; *People* v. *Temple,* 103 Cal. 453.)

It is urged that "the greater contains the less" (Civ. Code, sec. 3536), and hence that, as the judgment in question necessarily determines that the plaintiff is entitled to a divorce, it is therefore valid to that extent as an interlocutory judgment under the statute, and that the court should not vacate it, but should regard it as valid to that extent, and, the year having expired, should now enter a final judgment. Cases are cited to the effect that a judgment for too much, or in excess of the power of the court, is not wholly void, but is void only in so far as it is beyond the jurisdiction. (*Anderson* v. *Parker,* 6 Cal. 201; *Ex parte Rosenheim,* 83 Cal. 388; *People* v. *Brown,* 113 Cal. 35.) For the purposes of this decision this

may be conceded.   There are strong reasons in support of
the proposition.   If the order proposed to be entered by the
superior court in pursuance of the motion was as far-reach-
ing as the motion and purported to set aside the judgment
for all purposes, it would be necessary to decide the question.
It does not go so far.   It purports only to vacate ''so much
of the decree as awards to the said plaintiff an absolute di-
vorce,'' and expressly declares that, ''in so far as it may
determine that the plaintiff is entitled to a divorce,'' the judg-
ment is neither to be modified nor affected by the order.   The
proposed order is therefore strictly within the power of the
superior court, and the writ of prohibition should not be
issued.

The petition is denied.

Angellotti, J., Van Dyke, J., Lorigan, J., McFarland, J.,
Henshaw, J., and Beatty, C. J., concurred.