**McLELLAN v. AUTOMOBILE INS. CO. OF HARTFORD, CONN., et al. ***

No. 7475.

Circuit Court of Appeals, Ninth Circuit.

Nov. 20, 1935.

V. L. Hash, of Phœnix, Ariz., for appellant.

Redman, Alexander & Bacon, of San Francisco, Cal., Kibbey, Bennett, Gust, Smith & Rosenfeld, of Phœnix, Ariz., and Geo. J. Zech, of San Francisco, Cal., for appellee.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

GARRECHT, Circuit Judge.

Error on the part of the court below in sustaining the demurrers to the appellant's complaint is urged as the basis of the present appeal.

The appellant brought an action against the appellees, in the superior court of Maricopa county, Ariz., seeking to recover damages of $5,000 from each of them. The suit was based upon a contract of insurance, to the rights under which the appellant claims to have been subrogated.

The third amended complaint, upon which the issues were presented to the

*Rehearing denied Jan. 27, 1936.

court below, alleges, in substance, that Harry Soza died intestate on or about August 14, 1932; that thereafter, as the duly appointed and qualified special administrator of Soza's estate, the appellant instituted suit in the superior court of Maricopa county, Ariz., against the estate of Minnie Curless, deceased, to recover damages for injuries causing the death of the appellant's intestate through the alleged negligent operation of an automobile owned and operated by the said Minnie Curless, on or about August 14, 1932; and that on or about January 21, 1933, the appellant obtained a judgment in that suit, amounting to $7,500, against the estate of Minnie Curless.

The complaint further sets forth that, on March 2, 1932, each of the appellees executed an insurance policy whereby each appellee company, jointly and severally, agreed with the decedent, Minnie Curless, for a consideration, to pay $5,000 "for a personal injury or death resulting therefrom by reason of the" operation of the above-mentioned automobile, and to pay any loss or claim by reason of injury resulting in death, in a sum not to exceed $5,000. The policy is then set out in the pleading.

The complaint further alleges that the judgment recovered by the appellant has not been satisfied out of the Curless estate, which is without assets with which to pay it.

One of the allegations of the complaint is that each of the appellees was duly notified of the pendency of the action in the state court, and that each refused to defend or adjust, etc.

On petition of the appellees, the cause was removed from the state court to the court below.

Each appellee filed demurrers, an answer, and a motion for judgment dismissing the cause. The grounds for the demurrers were misjoinder of parties, misjoinder of causes of action, and the failure of the complaint to state facts sufficient to constitute a cause of action.

The court below sustained the separate demurrers of the appellees, and entered a judgment dismissing the cause. From that judgment the present appeal has been taken.

As the appellant points out in his brief, the sole issue here presented is whether or not, under the Constitution and the statutes of Arizona, there is a survival of a right of action in favor of the appellant administrator to recover against the administrator of the estate of the deceased alleged wrongdoer, damages for wrongful injury inflicted upon the appellant's intestate. This was the sole basis of the decision of the court below on the demurrers.

Accordingly, in our view of the case, it is unnecessary to consider the other questions raised by the appellees' demurrers.

■ There must first be disposed of, however, the contention urged by the appellant that the "remedy" of the appellees, "if they desire to object to the judgment obtained" in the state court, "is by a direct attack upon that judgment, and not by way of a collateral attack such as is made in the instant case." In support of this argument, the appellant asserts that under the contract of the appellees with the decedent Minnie Curless, "they were within the meaning of the rule making prior judgments conclusive, in this, that they were directly interested in the subject-matter of the suit and had a right to make a defense," etc.

It is hornbook law that a judgment wholly void for want of jurisdiction on the part of the court that rendered it, may be attacked collaterally. In Brecht v. Hammons, 35 Ariz. 383, 387, 388, 278 P. 381, 382, the court said:

"The question is as to the jurisdiction of the subject-matter. The action was one given, not by a provision of the common law, but, if at all, by the constitutional provision above quoted. If it falls within such provision, the court had jurisdiction of the subject-matter; if not, not. * * *

"We think the true rule is as follows: When a question as to the jurisdiction of the subject-matter is raised, the court must, of course, primarily determine its own jurisdiction. If its conclusion requires the actual or implied decision of a question of fact, then a determination necessarily based on that fact to the effect that the court has jurisdiction is conclusive as against collateral attack. When, however, the facts are admitted in the pleadings, and the court's determination is based upon an error as to the law arising out of the admitted state of facts, its decision is not conclusive, and the judgment, in case the decision was in error, is subject to collateral attack. [Many cases cited.]"

Limited as the foregoing language is to judgments based upon causes of action not arising under the common law, it accords with general law.

In East Tennessee, Virginia & Georgia R. Co. v. Southern Telegraph Co., 112 U.S. 306, 310, 5 S.Ct. 168, 169, 28 L.Ed. 746, Mr. Chief Justice Waite said: "The remedy is statutory only, and every court which takes jurisdiction for its enforcement is limited in its powers by the statute under which alone it can act."

In Galpin v. Page, 9 Fed.Cas. 1126, 1132, 1133, No. 5,206, Mr. Circuit Justice Field elaborated upon this rule in the following language: "But when the judgment of such a court [of general jurisdiction] relates to a matter not falling within the general scope of its powers, and the authority of the court over the subject can only be exercised in a prescribed manner, not according to the course of the common law; * * * no such presumption of jurisdiction can arise. The judgment being as to its subject-matter or persons out of its ordinary jurisdiction, authority for its rendition must appear upon the face of its record. In other words, there is no presumption in favor of the judgments of courts of general jurisdiction, except as to matters and persons falling within the scope of that general jurisdiction. When the proceeding is special and outside of that general scope, either as to subjects or persons, the presumption ceases, and the record must show a compliance with the special authority, by which the extraordinary jurisdiction is exercised. This doctrine is an obvious deduction from principle, and is sustained by adjudged cases almost without number in the highest courts of the several states, and in the supreme court of the United States. There is running all through the Reports the emphatic declaration of the common law courts, that a special authority, conferred even upon a court of general jurisdiction, which is exercised in a mode different from the course of the common law, must be strictly pursued, and the record must disclose the jurisdiction of the court."

In the instant case, it is not disputed that the right of action is purely statutory, and that a suit of this nature did not survive at common law. In the language of Mr. Circuit Justice Field, the jurisdiction is "extraordinary," and "not according to the course of the common law." The judgment of the state court, if in excess of the statutory authority, is void, and may be collaterally attacked.

This court has so held. In Murray v. American Surety Co. (C.C.A.) 70 F. 341, 346, the following language was used: "But the judgment of a court having no jurisdiction of the subject-matter or the parties, or the exercise of a power by the court not authorized by the statute in purely statutory proceedings, is utterly null and void, and may be collaterally assailed. [Many cases cited.]"

See, also, Broadmoor Land Co. v. Curr (C.C.A.8) 142 F. 421, 423, 424.

This doctrine has been repeatedly recognized by state courts. In Dailey v. Superior Court, 112 Cal. 94, 97, 44 P. 458, 459, 32 L.R.A. 273, 53 Am.St.Rep. 160, the Supreme Court of the state "annulled" an order of the lower court forbidding the performance of a play, and said: "We are entirely clear that the court had no jurisdiction to make the order which forms the basis of this proceeding, for such order was an attempted infringement upon rights guarantied to every citizen by section 9, art. 1, of the constitution of this state."

The Dailey Case was cited, with apparent approval by the Supreme Court of the United States in Near v. Minnesota, 283 U.S. 697, 719, 51 S.Ct. 625, 75 L.Ed. 1357.

The Court of Appeals of New York has repeatedly held that "a court authorized by statute to entertain jurisdiction in a particular case only, if it undertakes to exercise the power and jurisdiction conferred in a case to which the statute has no application, acquires no jurisdiction, and its judgment is a nullity, and will so be treated when it comes in question, either directly or collaterally." Risley v. Phenix Bank, 83 N.Y. 318, 337, 38 Am. Rep. 421, affirmed Phœnix Bank v. Risley, 111 U.S. 125, 4 S.Ct. 322, 28 L.Ed. 374; O'Donoghue v. Boies, 159 N.Y. 87, 53 N. E. 537, 540, and the many cases there cited; Doey v. Clarence P. Howland Co., 224 N.Y. 30, 120 N.E. 53, 55. See, also, Goldberg v. Levine, 199 App.Div. 292, 192 N.Y.S. 124, 127, 128; Davidson v. Ream, 178 App.Div. 362, 164 N.Y.S. 1037, 1041, 1042; Wright v. Atwood, 33 Idaho, 455, 461, 462, 195 P. 625; 15 C.J. 842; 15 R.C. L. 854.

In 34 C.J. 531, the general rule is thus stated: "Where a court is authorized by statute to entertain jurisdiction in a par-

ticular case only, if it undertakes to exercise jurisdiction in a case to which the statute has no application, such court acquires no jurisdiction and its judgment when made is a nullity and subject to collateral attack."

See, also, Grannis v. Superior Court, 146 Cal. 245, 255, 79 P. 891, 106 Am.St. Rep. 23; 1 Freeman on Judgments (Fifth Edition) § 322, pages 642–645, §§ 337 and 338, pages 674–678, § 373, pages 780, 781, § 382, pages 814–816; 2 op. cit. § 642, pages 1351–1353.

In the instant case, the appellant's third amended complaint clearly shows that it is based upon a judgment recovered in a state court, on an action in tort, brought after the death of the alleged wrongdoer. It therefore becomes necessary to inquire whether such an action is authorized by the laws of Arizona.

In support of his position, the appellant invokes a number of provisions of the Constitution and statutes of Arizona.

Article 18, § 6, reads as follows: "The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation."

The sections of the Revised Code of Arizona, 1928, relied upon by the appellant are as follows:

"§ 944. Whenever the death of any person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action to recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to murder in the first or second degree or manslaughter."

"§ 3038. * * * Statutes shall be liberally construed, to effect their objects and to promote justice."

"§ 3043. The common law, so far only as it is consistent with, and adapted to the natural and physical conditions of this state, and the necessities of the people thereof, and not repugnant to, or inconsistent with, the constitution of the United States, or the constitution or laws of this state, or established customs of the people of this state, is hereby adopted and shall be the rule of decision in all courts of this state."

"§ 3725. Actions for the recovery of personal property, debts or damages, and for the title or possession of lands, * * * or for any injury or damage done thereto, may be instituted by an executor, administrator, or guardian appointed in this state, in like manner as they could have been by their testator or intestate, and judgment therein shall be as conclusive as if rendered in favor of or against such testator or intestate. Such judgment may be set aside upon the application of any person interested for fraud or collusion on the part of such executor, administrator, or guardian."

"§ 3772. An action shall not abate by the death or other disability of a party, or by the transfer of any interest therein, if the cause of action survive or continue, but the court may allow the action to be continued by or against his representative or successor in interest; upon a transfer of interest, the action may be continued in the name of the original party, or the court may allow the substitution of the transferee. Upon the death or disability of a party or transfer of interest, any party may make and file with the clerk an affidavit of such death, disability or transfer and suggest the names and residences of proper new parties caused thereby, and the court may order such persons to be made parties to the action and that a summons issue directed to such persons."

"§ 3774. An action to recover damages for injuries to the person, or death caused by the wrongful act, default or neglect of another, shall not abate by reason of the death of the defendant, and his personal representative may be substituted as defendant. * * * The action shall thereupon proceed to judgment as if the defendant had remained alive, or the original receiver, assignee or trustee had continued in office."

"§ 4003. The executor or administrator may maintain action against any person who has wasted, destroyed, taken or carried away or converted to his own use the goods of his testator or intestate, or committed trespass on the real property of the decedent in his lifetime. Any person, or his personal representative, may maintain an action against the executor or administrator of a decedent who in his lifetime has wasted, destroyed, taken or

carried away or converted to his own use the goods or chattels of any such person, or committed any trespass on the real property of such person."

The appellant concedes that the right of action for wrongful death "is a purely statutory action," and that the character of suit brought in the state court by the appellant against the estate of Minnie Curless "does not survive at the common law." He also points out that section 944 of the Arizona Code, dealing with "liability in damages created for injuries resulting in death," is not a survival statute. In support of these propositions, the appellant correctly relies upon In re Estate of Lister, 22 Ariz. 185, 187, 195 P. 1113, and Sumid v. City of Prescott, 27 Ariz. 111, 114, 230 P. 1103. In addition, Southern Pacific Co. v. Wilson, 10 Ariz. 162, 169, 85 P. 401, might also be cited.

In view of the foregoing concessions, it is difficult to understand why the appellant invokes the constitutional provision quoted above; for that provision protects only "the right of action to recover damages for injuries" as it was recognized by the common law. This was definitely held by the Supreme Court of Arizona, in Alabam's Freight Co. v. Hunt, 29 Ariz. 419, 443, 242 P. 658, 665. The appellant himself quotes the Supreme Court's language in that case:

"It is true that the action of negligence was originally a common-law one, but its status was, in our opinion, changed when article 18, § 6, was adopted. Its language is as follows:

"'Sec. 6. The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation.'

"Taken into consideration with the preceding sections 4 and 5, it is beyond question that the 'right of action to recover damages for injuries * * *' therein mentioned is the common-law action of negligence, and that by the prohibition against its abrogation it was taken from its status as one subject to the will of the Legislature and imbedded in the Constitution, just as firmly and truly as the Compensation Act or Liability Law."

Therefore, since the right of action that we are here considering was not recognized under the common law, it does not come within the protection of the State Constitution. The Legislature may limit the "purely statutory right" as it sees fit.

Quoting the "death by wrongful act" statute of Arizona as it then existed, the Supreme Court of the state, in Don Yan v. Ah You, 4 Ariz. 109, 111, 77 P. 618, 619, said: "The action at bar, however, is statutory, and the right to recover must be sought within its provisions."

At the common law, causes of action based upon personal injuries do "not survive the death of either the person to or by whom the wrong was done." Clark v. Goodwin, 170 Cal. 527, 150 P. 357, 358, L. R.A. 1916A, 1142.

It is equally well established that "causes of action under remedial statutes, to recover for torts, abate according to the established rules of the common law the same as ordinary common law actions, unless they are saved by a statutory provision." Sullivan v. Associated Billposters and Distributors (C.C.A.2) 6 F.(2d) 1000, 1010, 42 A.L.R. 503.

We must therefore examine the statutes of Arizona, and determine whether or not they specifically authorize an action for "death by wrongful act" after the death of the alleged wrongdoer.

In this examination of the statutes, the appellant insists that we should be guided by the canon of liberal construction, prescribed by section 3038 of the Arizona Code, supra. On the other hand, there is to be kept in mind the rule that statutes in derogation of the common law should be strictly construed.

Section 144 of the Compiled Statutes of Washington, 1922 (Remington), reads as follows: "The provisions of this code shall be liberally construed, and shall not be limited by any rule of strict construction."

The foregoing section is even more emphatic in favor of liberal construction than is section 3038 of the Arizona Code. Yet, with such a provision in force at the time when its decision was rendered, the Supreme Court of Washington, in the case of Bortle v. Osborne, 155 Wash. 585, 591, 592, 285 P. 425, 428, 67 A.L.R. 1152, which involved a "death by wrongful act" statute similar to that of Arizona, said:

"This is an action to recover for death by wrongful act. The right of action for wrongful death is created by statute, and the action abates upon the death of the wrongdoer unless statutory authority for

survival of the action can be found. At common law an action for death by wrongful act abated upon the death of the injured person or upon the death of the wrongdoer. That situation obtained in England until the passage of Lord Campbell's Act. By our statute, first enacted in 1854, a right of action is given for the death of a person caused by the wrongful act, neglect, or default of another.

"'When the death of a person is caused by the wrongful act, neglect or default of another his personal representative may maintain an action for damages against the person causing the death. * * *' Section 183, Rem.Comp.Stat.

"By virtue of that statute an action for the death of a person may be maintained against the tort-feasor. Neither the terms of that statute nor the statute on survival of actions,

"'All other causes of action [than those enumerated in § 183] by one person against another, whether arising on contract or otherwise, survive to the personal representatives of the former and against the personal representatives of the latter. Where the cause of action survives as herein provided, the executors or administrators may maintain an action at law thereon against the party against whom the cause of action accrued, or after his death against his personal representatives.' Section 967, Rem.Comp.Stat., extends the right of action against the personal representatives of the deceased tort-feasor. In the event of the wrongdoer's death the common-law rule of *actio personalis moritur cum persona* prevails; that is, the right of action for the tort does not survive the death of the tort-feasor. [Case cited.]

"The authorities overwhelmingly support the view that, in the absence of a statute expressly so providing, the right of action for death by wrongful act does not survive the death of the wrongdoer. The reason for the adoption of this position is that such action, being purely statutory in its nature and being unknown to the common law, should be strictly confined within the limits of the statute creating the right."

Counsel in the instant case agree that the precise question here present has not been passed upon by the Supreme Court of Arizona. Accordingly, it will be helpful to consider the decisions of the highest tribunals of other Code states that have similar statutes.

In Clark v. Goodwin, supra, 170 Cal. 527, 150 P. 357, at pages 358 and 359, L. R.A. 1916A, 1142, the Supreme Court of California said:

"The only question on this appeal is whether the cause of action so given survives the death of the person who wrongfully or negligently causes the death on account of which damages are claimed. Admittedly it does not survive the death of the wrongdoer if the well-settled common-law rule relative to abatement of a cause of action for damages or injuries to person on the death of the wrongdoer has not been changed by statute in this state. * * *

"Nothing was more firmly settled at common law than the rule that such a cause of action, except under certain circumstances which do not exist here, does not survive the death of either the person to or by whom the wrong was done. This rule exists here, except in so far as it has been modified or abolished by statute. * * *

"The authorities are uniform in supporting the conclusion we have reached, that under such statutes as ours the cause of action for damages for the death of her husband given plaintiff by section 377, Code of Civil Procedure, abated with the death of the alleged wrongdoer prior to action brought, and that such action cannot be maintained against his personal representatives."

See, also, Myers v. Harrington, 70 Cal. App. 680, 689, 234 P. 412; Kranz v. Wisconsin Trust Co., 155 Wis. 40, 143 N.W. 1049, 1050, Ann.Cas. 1915C, 1050; Willard v. Mohn, 24 N.D. 390, 139 N.W. 979, 980; Johnson v. Farmer, 89 Tex. 610, 35 S.W. 1062.

The appellant insists that section 3774, supra, is a "survival statute," and that it is necessary to determine the intent of the Arizona Legislature "from the language used in section 3774, as distinguishing it from section 3772 supra." The appellant presses the contention that "the word 'action' as defined in section 3774, above, necessarily is not limited to an action pending in court at the time of the decease of the wrongdoer, but has a much broader meaning." The appellant continues: "If this were the intent of the legislature, then there would be no necessity of section 3774, since section 3772 would revive such an action."

Examining the text of section 3774, we find numerous evidences of the legislative intent to make it apply only to proceedings already instituted. The action "shall not abate by reason of the death of the *defendant,* and his personal representative may be *substituted as defendant.*" "The action shall thereupon *proceed to judgment* as if the *defendant* had remained alive." To the legal mind, all the expressions that we have italicized suggest a court proceeding already instituted; and we have no doubt that the Legislature of Arizona so intended it.

Indeed, the text of section 3772, which the appellant insists should be read in connection with section 3774, discloses that the Legislature was sensible of the distinction between an "action" and a "cause of action"; for the opening language of section 3772 is as follows: "An *action* shall not abate by the death or other disability of a party, or by the transfer of any interest therein, if the *cause of action* survive or continue." (Italics our own.)

An argument similar to the appellant's seems to have been made in the case of Clark v. Goodwin, supra, 170 Cal. 527, 150 P. 357, at page 358, L.R.A. 1916A, 1142, for in that case the Supreme Court of California used the following language:

" 'An action or proceeding does not abate by the death * * * of a party, * * * if the cause of action survive. * * * [Code of Civil Procedure, Sec. 385.]'

"This refers only to actions or *proceedings instituted prior* to the death of a party, applies only where the cause of action survives, and does not purport to in any way change any existing rule as to survival of *causes* of action." (Italics our own.)

Section 3772 of the Arizona Code is similar to the California statute quoted in Clark v. Goodwin, save that the words "or proceeding" are omitted after "action." And in the instant case, as in Clark v. Goodwin, the "action or proceeding" was "instituted" *after* the death of the alleged wrongdoer.

Again, in Wynn v. Tallapoosa County Bank, 168 Ala. 469, 53 So. 228, 237, we find the distinction between "action" and "cause of action" thus lucidly expounded: "At common law not only the cause of action, but the action itself died with the person. It was thus expressed in Latin: 'Actio personalis moritur cum persona.' Broom's Legal Maxims. The Latin word 'actio,' as used in the civil law, meant both the proceeding to enforce the right and the right itself. Rapalje's Law Dict. But the English word 'action,' derived from it, was never given that dual meaning in the English common law, nor in our common law. It is defined by Rapalje as 'a civil proceeding taken in a court of law to enforce a right.' "

After an elaborate discussion of the authorities, the Supreme Court of Alabama continued: "We only cite these to show that our statute as to the survival of 'actions' does not include 'causes of actions,'. or 'rights of action.' Our statute on the subject is as follows, Code, § 2496: 'All actions on contracts, expressed or implied; all personal actions, except for injuries to the reputation, survive in favor of and against the personal representatives.' "

See, also, Johnson v. Farmer, supra, 89 Tex. 610, 35 S.W. 1062, at page 1063.

Indeed, the very argument of the appellant, namely that sections 3772 and 3774 should be considered together, and each should be given effect, rebounds against his contention. Section 3772 provides that "an action shall not abate by the death or other disability of a party," etc., "if the cause of action survive or continue." If, as the appellant contends, the *cause* of "action"—as contradistinguished from the proceeding—"to recover damages for * * * death caused by the wrongful act," etc., of another did survive the death of the wrongdoer, there would, in the appellant's own words, "be no necessity of section 3774, since section 3772 would revive such an action." In other words, if the *cause* of action for death by wrongful act survived the death of the tort-feasor, the Legislature would not have found it necessary to enact section 3774, since section 3772 already provided that actions shall not abate "if the cause of action survive or continue." It is clear that in a case where the wrongdoer dies, section 3774 is designed to *revive* an "action"; i. e., a "proceeding," which has theretofore been instituted to recover damages for death by wrongful act, even though the *cause* of action itself, if the proceeding had not been instituted before the death of the wrongdoer, would not have survived his death.

Furthermore, another indication that the Arizona Code uses the word "action" in the sense of "proceeding" and not "cause of action," is found in section 3040 of that compilation: "The following words shall have in the statutes the signification attached to them in this section, unless otherwise apparent from the context: * * * 'Action' includes any matter or proceeding in a court civil or criminal."

Finally, the appellant contends that section 4003 of the Arizona Code "creates a right of action to recover for . * * * destruction of goods or chattels as against the representative of the deceased's estate," which would support the present action, since "the right of action for wrongful death is a species of property in the personal representative of the deceased person, that is, it is a chose in action for the benefit of the estate." The appellant also argues that the term "chattels" is "sufficiently broad to include every chose in action which would constitute an asset of the estate of an injured person."

A similar contention was exhaustively discussed by the Supreme Court of Wisconsin in Kranz v. Wisconsin Trust Co., supra, 155 Wis. 40, 143 N.W. at pages 1049, 1050, Ann.Cas. 1915C, 1050. In that case the court said:

"The inquiry, therefore, must be limited to the question whether or not a cause of action given by sections 4255 and 4256, Stats. 1911, or for death by wrongful act in favor of beneficiaries standing in a certain relation to the deceased, survives under the provision of section 4253, Stats. 1911, which reads: 'In addition to the actions which survive at common law the following shall also survive: Actions for the recovery of personal property or the unlawful withholding or conversion thereof, for assault and battery, false imprisonment or other damage to the person, for all damage done to the property rights or interests of another, for goods taken and carried away, for damages done to real or personal estate. * * *' Unless some statute can be found providing for survival, the action abates. Such was the rule of the common law. [Cases cited]

"It is claimed by plaintiff that the clause 'for all damage done to the property rights or interests of another' provides for the survival of the action against the estate of the tort-feasor. * * * But the New York court, as early as 1885, in Hegerich v. Keddie, 99 N.Y. 258, 1 N.E. 787, 52 Am.Rep. 25, decided that the clause 'for all damage done to the property rights or interests of another' meant for all damage done to the property rights or interests of the deceased and not to the property rights or interests of a relative or beneficiary named under the statute giving such relative or beneficiary a right of action by reason of the death of the deceased by wrongful act, and it was there held that the statutory cause of action for the death of a person by the wrongful act or negligence of another abated upon the death of the wrongdoer. The same result has been reached by other courts under similar statutes. [Many cases cited.]"

So in the instant case, it can be said that, even if we were to accept the appellant's view that the right of action for wrongful death is a "chattel," it is a chattel belonging to the estate. The "chattels" referred to in section 4003 are the chattels of the decedent, and not the chattels of the estate. Clearly, the statutory right to sue for the decedent's wrongful death never belonged to the decedent himself. The appellant himself argues that it is "a chose in action for the benefit of the estate." Southern Pacific Co. v. Wilson, supra, 10 Ariz. 162, at page 169, 85 P. 401; De Amado v. Friedman, 11 Ariz. 56, 61, 89 P. 588. Not being part of the decedent's "goods or chattels," it does not come within the purview of section 4003, which authorizes an executor or administrator to maintain an action against the personal representative of one who has destroyed the chattels of the decedent. See, also, Claussen v. Brothers, 148 S.C. 1, 145 S.E. 539, 540, 61 A.L.R. 826.

Accordingly, we are of the opinion that the court below was correct in sustaining the demurrers of the appellees.

Judgment affirmed.

DENMAN, Circuit Judge.

This appeal concerns the process to which a plaintiff in an Arizona court is subject where he seeks a judgment against the administrator of a deceased tort-feasor based upon a pleading for damages for the deceased's negligence. It brings to us the question whether the denial of jurisdiction to the superior court to render such a judgment is a violation of the "due process" clause of the Fourteenth Amendment of the Constitution.

The appeal is from a judgment of the District Court sustaining a demurrer to a

complaint alleging as the basis of its cause of action an unsatisfied final judgment of a superior court of Arizona. The complaint below alleged that one Minnie Curless caused the death of one Soza by the negligent driving of her automobile; that thereafter she died, and

### "IV.

"That on or about the 22nd day of August, 1932, this plaintiff as such administrator *brought an action* in the Superior Court of the State of Arizona, in and for the County of Maricopa *against* George Barnum, *Special Administrator* of the estate of Minnie Curless, deceased, to recover for the wrongful death of the said Harry Soza by virtue of the negligent operation of the aforesaid automobile in which the plaintiff's deceased was riding by the said Minnie Curless now deceased.

### "V.

"That thereafter, to wit: on or about the 21st day of January, 1933, this Administrator as such Administrator did obtain a judgment in the Superior Court of the State of Arizona, in and for the County of Maricopa against the estate of said deceased in the sum of Seven Thousand Five Hundred Dollars together with interest at the rate of six per cent per annum until paid."

The case was decided below and argued and submitted here by both parties on the theory that the above pleading properly alleged a judgment based on a complaint brought against the administrator of a deceased tort feasor for her tort. No special demurrer was interposed raising the question whether the above description of this Arizona action did not imply that the cause of action was stated in a complaint filed therein. No error is assigned that the issue of law decided by the court below and joined in by both parties here, namely, whether in Arizona such a judgment is void and attackable collaterally, was not presented by the pleadings. On the contrary, the errors assigned here by appellant tendering pertinent issues of law are necessarily based on appellant's acceptance of the pleading as alleging a judgment based on a cause of action against the administrator of a deceased tort feasor. They are as follows:

"3. This was error because the statutes of Arizona specifically provide for the survival of a right of action against the estate of a deceased wrongdoer as against his personal representative.

"4. That the statutes of Arizona specifically create a new right of action on behalf of the representative for a death caused by a wrongful act for the benefit of the estate of the deceased as against the estate of a wrongdoer. * * *

"5. That Article 18, Section 6, of the Constitution of Arizona imbeds into the Constitution of the State of Arizona the right of action to recover damages for injuries by reason of acts of negligence, and can never be abrogated and made subject to statutory limitation."

In my opinion, regardless of this acceptance by both parties of this construction of the complaint in this case, it is a necessary inference from the pleading that the cause of action upon which the challenged judgment rests was set forth in a complaint stating it. I am unable to agree with Judge WILBUR that the issue decided below and argued here is not before us.

Nor am I able to agree that where it is alleged that an action is "brought" against the administrator of a deceased tort-feasor we are permitted to infer, out of thin air, that it was *not* "brought" against the administrator but *was* brought against the tort-feasor while alive, and thereafter the administrator was *substituted* as defendant.

Minnie Curless was insured by appellees for insurance covering her negligent driving of the automobile causing the death of appellant's intestate. Appellant claims to be subrogated to the deceased's insured's rights against appellees under their policy, as determined in the Arizona judgment. The appellee insurance companies do not question the subrogation. They assign misjoinder of one of the companies, but this becomes moot as a result of our decision that the Arizona judgment is void.

This court is agreed that in Arizona a cause of action against a tort-feasor does not survive his decease, and that a complaint against the estate of a deceased tort-feasor fails to state a cause of action.

The demurrer was sustained by the court below on the ground that, since the complaint alleged that the tort-feasor was dead, and under the Arizona law the right of action against her did not survive, the judgment, based on the complaint, which,

under the Arizona law, is a part of the judgment roll, is void. In effect the challenged judgment of the District Court rests on a decision that under the Arizona law its courts have no "jurisdiction" over the subject-matter of a right not existing at common law and not created, as claimed, under the Arizona Constitution, and hence have no jurisdiction to render a judgment granting affirmative relief based on a complaint claiming on a cause of action never existing.

The question for our solution is whether the judgment of the District Court properly rests upon the law of Arizona as declared by its Supreme Court. The case of Brecht v. Hammons, 35 Ariz. 383, 278 P. 381, 382, presented the exact question now before us. It dealt with the exercise of the jurisdiction of the superior court created by the Arizona Constitution and organized as to its judicial processes by the Arizona Legislature. That case, as this, involved a superior court judgment rendered upon a claimed cause of action not existing at the common law; the claim of a corporate debtor against its stockholder. In the case before us it is the right to recover against the estate of a decedent for a tort committed by him; a right also not existing at common law. In the Brecht Case it was claimed the right was created by the Arizona Constitution. In the present case it is claimed the right against the deceased tort-feasor is created by the Arizona Constitution. We are agreed that it is not.

In the Brecht Case, the superior court judgment against the corporate stockholder became final. The judgment creditor Hammons and debtor Brecht compromised the judgment debt and the lesser amount was paid by Brecht. Thereafter, the Arizona Supreme Court held the stockholder not liable under the stockholder provisions of the Arizona Constitution, in a case similar to that in which the superior court had held the contrary.

Brecht brought suit to recover the amount paid Hammons on the ground that, since the complaint on which the judgment was based disclosed no cause of action ever existing at common law or under the State Constitution, the judgment was void. Hence, the money paid in its settlement was recoverable because paid without consideration.

The Supreme Court of Arizona held that the judgment was void because the superior court had no *"jurisdiction of the subject-matter"* of a right of action not created by the common law and not created under the Arizona Constitution. It further held that since there was absence of jurisdiction of the subject-matter, there was absence of jurisdictional power to render a judgment for the plaintiff. Such a judgment, being void, could be attacked collaterally.

The specific language of the Supreme Court of Arizona is as follows:

"The question is as to the jurisdiction of the subject-matter. The action was one given, not by a provision of the common law, but, if at all, by the constitutional provision above quoted. If it falls within such provision, the court had jurisdiction of the subject-matter; if not, not. On the one hand, we are met with the contention that if judgments, where there is an honest difference of opinion when they are rendered as to what the law is, may be attacked at a later date as being absolutely void, there is never any certainty or finality to a judgment. On the other hand, it is urged that it would be a travesty on justice to allow a judgment to stand which the highest authority had decided was based upon an alleged right which on the undisputed facts did not and which never *could* exist.

"We think the true rule is as follows: When a question as to the jurisdiction of the subject-matter is raised, the court must, of course, primarily determine its own jurisdiction. If its conclusion requires the actual or implied decision of a question of fact, then a determination necessarily based on that fact to the effect that the court has jurisdiction is conclusive as against collateral attack. When, however, the facts are admitted in the pleadings, and the court's determination is based upon an error *as to the law arising out of the admitted state of facts, its decision is not conclusive* [italics ours] and the judgment, in case the decision was in error, is subject to collateral attack." (Citing cases.)

Brecht v. Hammons has been cited in several subsequent Arizona cases. The doctrine has never been questioned as applying to cases where a complaint has failed to state a cause of action. It is clarified by distinctions between it and cases where errors of law are committed and the court has been held to have jurisdiction of the *subject-matter;* such as

errors (1) in distributions of decedents' estates where the court was held to have the jurisdiction to make a distribution, Latham v. McClenny, 36 Ariz. 337, 345, 285 P. 684; Varnes v. White, 40 Ariz. 427, 430, 431, 12 P.(2d) 870, and (2) in distribution of the assets of a bank, Sawyer v. Ellis, 37 Ariz. 443, 447, 295 P. 322.

The recent case of Dockery v. Central Arizona Light & Power Co. (Ariz.) 45 P.(2d) 656, also has to do with a probate order concerning which the Supreme Court states the superior court had jurisdiction of the subject-matter, and hence, says the opinion, the order was not subject to collateral attack for fraud. The opinion on this point is not inconsistent with the Brecht Case. Its reasoning is somewhat obscured in the maze of factual allegations and may well be regarded as obiter, since the court holds that the order under direct attack, as distinguished from collateral, must be sustained.

In the course of the discussion the opinion relies on Brecht v. Hammons as stating the law controlling jurisdiction in Arizona, but also quotes from an earlier opinion stating that a judgment, become final, is not subject to collateral attack on the ground that the complaint fails to state a cause of action. The possibility of an inconsistency of dicta is not disclosed in the opinion. However, I refuse to consider as a possible inference that in this able court the Arizona law on this jurisdictional question is "passing over" in the sense that phrase is used with reference to the intermingling of races of different characteristics in the American social order, however high the sanction the legal historian may find for this method of overruling prior decisions.

We are not here concerned with resolving possible conflicts of dicta, but with the *present* Arizona law as affecting the parties before us. The Dockery Case does not overrule the Brecht Case, and it is still the law of Arizona that a judgment granting plaintiff relief is void if the claimed cause of action set forth in the complaint never existed at common law and was not created by the Arizona Constitution or statutes.

Both Judge WILBUR and myself are agreed that if we were justices of the Supreme Court of the state of Arizona we would have decided the Brecht Case differently. We would have held that the powers and processes conferred on its superior court by Arizona's Constitution and Legislature should be otherwise construed. We would have held with an earlier Arizona decision that in that state its Constitution gave to the superior court the jurisdiction to consider and determine whether such a right of action against a stockholder of a corporation existed either at common law or under the laws of Arizona, whether expressed in its Constitution or legislation. Having held that it had the jurisdiction to hear and determine this question, we would have held further that, if the superior court erred in the exercise of that jurisdiction and found that such a right existed, when it did not, the judgment based on that erroneous interpretation of the law, when it became final, was not subject to collateral attack.

If I read Judge GARRECHT'S opinion correctly, he would have decided with the justices in the Brecht Case. In so deciding he would have the respectable support of the Supreme Court of California as it established the law in Dailey v. Superior Court, 112 Cal. 94, 97, 44 P. 458, 32 L.R.A. 273, 53 Am.St.Rep. 160. However, instead of being Arizona supreme justices, we are judges of a court of an entirely different jurisdiction created by the Federal Constitution. That Constitution gives to its federal courts only the judicial powers delegated to the federal government. As to the powers reserved to the states, it is as much our duty to prevent their invasion by federal adjudication as it is to exercise our own delegated federal powers.

■■ I am of the opinion, and in this I am permitted to say that Judge GARRECHT concurs, that the question of the exercise of the judicial processes of a court created under the law of the state of Arizona, in part by the State Constitution and in part by statute, is a matter purely of state concern. It is one of the powers reserved to the state by the Federal Constitution. The federal courts are prohibited by the Constitution from determining whether or not the Supreme Court of the state of Arizona has properly interpreted the powers and processes of the courts created under the state law. The only question the Constitution permits us to consider with reference to the jurisdictional processes of state-created courts is whether the state process is not "due process," as that term is used in the Fourteenth Amendment to the Constitution, as follows: "Nor shall

any State deprive any person of life, liberty, or property, without due process of law."

The Supreme Court has repeatedly stated this limitation of the federal courts in their review of the law of the different states, with reference to the processes established by those states for the exercise of the jurisdiction of their courts.

"*Due process of law* is process due according to the law of the land. *This process in the States is regulated by the law of the State. Our power over that law is only to determine whether it is in conflict with the supreme law of the land,* —that is to say, with the Constitution and laws of the United States made in pursuance thereof,—or with any treaty made under the authority of the United States, Art. 6, Const. Here the State court has decided that the proceeding below was in accordance with the law of the State; and we do not find that to be contrary to the Constitution, or any law or treaty of the United States." (Italics ours.) Walker v. Sauvinet, 92 U.S. 90, 93, 23 L.Ed. 678.

The Supreme Court has held a much broader limitation of our power to construe state laws contrary to the interpretation of state courts. We cannot do so if the law, either constitutional or statutory, controls any matter of state as distinguished from federal concern. Garrison v. City of New York, 21 Wall. (88 U.S.) 196, 203, 22 L.Ed. 612; Hancock Nat. Bank v. Farnum, 176 U.S. 640, 643, 20 S.Ct. 506, 44 L.Ed. 619; Old Colony Trust Co. v. Omaha, 230 U.S. 100, 116, 33 S.Ct. 967, 57 L.Ed. 1410; Price v. Illinois, 238 U.S. 446, 451, 35 S.Ct. 892, 59 L.Ed. 1400; George Ry. & Power Co. v. Decatur, 262 U.S. 432, 438, 43 S.Ct. 613, 67 L. Ed. 1065.

The question then is, Did the Arizona Supreme Court in interpreting the constitutionally created power of its superior court deny due process of law to the plaintiff and subsequent judgment creditor, when it held (1) that the superior court had no jurisdiction of the subject-matter of a right of action nonexistent at common law and not created by the law of Arizona either by its Constitution or other legislation; and (2) that the court had no power to render judgment for the plaintiff where the pleadings showed such absence of a cause of action?

To put it more concretely, Has a plaintiff a constitutional right to persuade a court to rule that a complaint which fails to state a cause of action, does state such a case and thereupon receive a judgment beyond attack on the ground of the wrong committed by its beneficiary? Does the Constitution determine that courts are such arenas of litigation that a State *must* give to a plaintiff such a fighting chance at successful wrongdoing to his adversary?

At common law the plaintiff's complaint may state no cause of action on a subject matter within the court's jurisdiction and, if he can persuade the court to award him judgment, that judgment on becoming final is valid against collateral attack.

Arizona has deprived a plaintiff of his chance to persuade the court to give him a judgment where he shows no cause of action. That at common law a plaintiff may so wage his contest against his opponent does not compel Arizona to allow him so to do. As the Supreme Court has held, state laws may modify the processes of justice; they "may alter the mode and application, but have no power over the substance of original justice." Hurtado v. California, 110 U.S. 516, 532, 4 S.Ct. 111, 119, 28 L.Ed. 232. As was more recently stated by Mr. Justice Cardozo in Snyder v. Massachusetts, 291 U.S. 97, 105, 54 S. Ct. 330, 332, 78 L.Ed. 674, 90 A.L.R. 575:

"The commonwealth of Massachusetts is free to regulate the procedure of its courts in accordance with its own conception of policy and fairness, unless in so doing it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."

It is my opinion that denying to plaintiff this chance at unassailable wrongdoing does not deny him the "substance of original justice." The law of Arizona satisfies the requirements in that regard as laid down in Kennard v. Louisiana, 92 U.S. 480, 483, 23 L.Ed. 478, as follows: "From this it appears that ample provision has been made for the trial of the contestation before a court of competent jurisdiction; for bringing the party against whom the proceeding is had before the court, and notifying him of the case he is required to meet; for giving him an opportunity to be heard in his defence; for the deliberation and judgment of the court; for an appeal from this judgment to the highest court of the State, and for hearing and judgment there."

I cannot agree with the contention that the Arizona Supreme Court had before it in the Brecht Case some general law controlling the jurisdictional processes of all courts created by the law, constitutional or statutory, of the various states of the United States. Under our form of government, such a general law for the control of judicial processes in the various states does not exist. The only question before the Arizona Supreme Court in the Brecht Case and before the District Court in the instant case concerned the jurisdictional processes of the state of Arizona. Nor is it a matter of our concern that in deciding what the law of jurisdiction in Arizona is, that court may have thought other states have similar processes when we think they do not.

Strong arguments of convenience may be urged against the Arizona decision. Innumerable border line rights of action can be rationally imagined. They would appear in the pleadings which, under the Arizona law, are a part of the judgment roll. Judgments would be infected with uncertainty, and because of such uncertainty their value for purposes of hypothecation, sale, or consideration for other transactions would be greatly impaired. However, we are not concerned with the wisdom or practicality of Arizona's judicial process. If Arizona's process is inconvenient and uncertain in results, no doubt that state will find it out and, if necessary, amend its Constitution or statutes as required. In my opinion, the judgment of the District Court should be Affirmed.

WILBUR, Circuit Judge (dissenting).

The complaint herein, which was dismissed for failure to state a cause of action, alleged the death of Harry Soza as a result of the negligence of Minnie Curless in the operation of an automobile, as to which negligence liability insurance had been issued by appellees. The complaint alleged, that suit was brought and judgment recovered against the special administrator of the estate of Minnie Curless for the sum of $7,500, and that the same was still unpaid, and the estate of Minnie Curless is without funds to pay the judgment. The general effect of the policies and of the judgment is pleaded.

It is held by the majority of this court that the judgment relied upon by the pleader is void for lack of jurisdiction over the subject-matter, that is, over the cause of action for tort because the complaint in that action did not state facts sufficient to constitute a cause of action, although, be it noted, the complaint is not before us. The pleader contented himself with alleging that the superior court of Arizona, a court of general jurisdiction, had rendered the judgment. I quote the allegations of the complaint: "That on or about the 22nd day of August, 1932, this plaintiff as such administrator brought an action in the Superior Court of the state of Arizona, in and for the county of Maricopa against George Barnum, Special Administrator of the estate of Minnie Curless, deceased, to recover for the wrongful death of the said Harry Soza by virtue of the negligent operation of the aforesaid automobile in which the plaintiff's deceased was riding by the said Minnie Curless now deceased.

"That thereafter, towit: on or about the 21st day of January, 1933, this Administrator as such Administrator did obtain a judgment in the Superior Court of the State of Arizona, in and for the county of Maricopa against the estate of said deceased in the sum of seven thousand five hundred dollars together with interest at the rate of six per cent per annum until paid."

This pleading is sufficient to invoke the rule that the jurisdiction of a court of general jurisdiction is presumed from the fact that it renders a judgment. 15 Cal.Jur. 282, § 273; High v. Bank of Commerce, 95 Cal. 386, 389, 30 P. 556, 29 Am.St.Rep. 121. The rule is thus stated in 21 R.C.L. § 24: "It is a general rule that in pleading judgments of courts of general jurisdiction the jurisdiction of the court need not be affirmatively shown by stating the facts on which it attached, for nothing is intended to be out of the jurisdiction of a court of record but what specially appears to be so: and nothing is intended to be within the jurisdiction of an inferior court but what is specially alleged. All that is ordinarily required is that it appear that the judgment had been duly given or made or that it had been duly adjudged."

As the opinion of each of my associates is based upon the proposition that the complaint in the action against the special administrator of the estate of Minnie Curless did not state a cause of action, it may be sufficient to point out that the com-

plaint in that action is not before us, and that in its absence we are bound to assume from the facts pleaded that it does state a cause of action, if it is necessary so to do in order for the superior court to have jurisdiction of the subject-matter.

It may be contended that, as it was impossible to state. such a cause of action against the administrator of the estate of Minnie Curless under the statutes of Arizona, it must be presumed that no such cause of action was stated. There are two answers to this proposition. First, to apply such a presumption would not only be in direct opposition to the rule above stated as to the judgments of a court of general jurisdiction, but would also be to extend the doctrine of the decision of the Arizona Supreme Court in Brecht v. Hammons, 35 Ariz. 383, 278 P. 381, beyond its scope and intent. The second proposition is that according to the law of Arizona, as interpreted by Judge GARRECHT and concurred in by Judge DENMAN, with which interpretation I also concur, it was possible to state a cause of action against the special administrator of the estate of Minnie Curless for the negligence in question, if an action had been begun against her before her death for the tort. Upon that subject the trial judge stated in his opinion[1] that: "No action was commenced against the said Minnie Curless during her life time." He based his decision upon that assumption. This statement is not based upon any fact pleaded, and is directly in the teeth of the facts which must be presumed from the pleading upon the assumption I am now making.

I should here state that none of the foregoing propositions are dealt with in the briefs or argument of counsel.

According to my view, it is not material to the validity of the judgment of the court in the action against the special administrator of the estate of Minnie Curless whether or not the complaint in that action states a cause of action. Upon the assumption of the parties, we all assume that the appellees are privy to the judgment and bound by it if the judgment is valid against the special administrator of the estate of Minnie Curless. I hold that the judgment is valid. I have pointed out, however, that we must assume that the complaint in that action states a cause of action if that point is material, as my associates hold. Each of my associates re-

lies upon the decision of the Supreme Court of Arizona, written by Judge Lockwood, in Brecht v. Hammons, supra. Judge GARRECHT holds that the opinion is a correct statement of general law, and Judge DENMAN that it is not, but that it must be followed by us. I think that neither proposition is tenable. As to Judge GARRECHT'S proposition that it is universally necessary in stating a right based upon a statute to state a good cause of action in order to vest jurisdiction of the controversy in a court of general jurisdiction, I have found no case holding such a proposition other than Brecht v. Hammons, supra, and none of the cases cited by that court to support that conclusion do so. The opinion of the court recognizes and states the correct rule, but announces the following exception: "When, however, the facts are admitted in the pleadings, and the court's determination is based upon an error as to the law arising out of the admitted state of facts, its decision is not conclusive; and the judgment, in case the decision was in error, is subject to collateral attack." In the very next paragraph the court referred to its recent decisions, also written by Judge Lockwood, Hammons v. Watkins, 33 Ariz. 76, 262 P. 616, and Herndon v. Hammons, 33 Ariz. 88, 262 P. 620, dealing with the same subject-matter in which both the trial court and the Supreme Court of Arizona assumed and exercised jurisdiction, although it was expressly held by both courts that the complaint did not state a cause of action as to the very same subject-matter as the court was dealing with in Brecht v. Hammons, supra. These two decisions of the Arizona Supreme Court are implied holdings that they had jurisdiction, regardless of the sufficiency of the facts pleaded to state a cause of action. I think the true rule is stated by the Arizona Supreme Court in an earlier case (1914) than Brecht v. Hammons (1929), where that court said, in Tube City Min. & Mill. Co. v. Otterson, 16 Ariz. 305, page 311, 146 P. 203, 206, L.R.A. 1916E, 303, as follows:

"Superior courts are courts of general jurisdiction. They have jurisdiction in cases involving the foreclosure of all mortgages and liens. Such jurisdiction may not be the subject of any controversy. Judgments of courts within the scope of their power to hear and determine are not

---

[1] Not for publication.

void, whether right or wrong. If it was within its power to determine the sufficiency of the Otterson claim for lien, as tested by the statutes of Arizona, its action in determining its sufficiency involved only a construction of the statutes relating to liens of laborers—a rightful exercise by the court of its jurisdiction. If the decision on the question was wrong, its judgment could have been reversed on appeal; it cannot be successfully impeached collaterally. * * *

"Whether a complaint does or does not state a cause of action, so far as it affects the question of jurisdiction, is tersely stated in the case of Winningham v. Trueblood, 149 Mo. 572, 51 S.W. 399, in a quotation from 1· Elliott, Gen.Prac., § 320, as follows:

" 'Whether a complaint does or does not state a cause of action, is, so far as concerns the question of jurisdiction, of no importance; for, if the complaint states a case belonging to a general class over which the authority of the court extends, there is jurisdiction, and the court has power to decide whether the pleading is good or bad.' "

In a case later than Brecht v. Hammons, supra, the Supreme Court of Arizona again applied and elaborated the doctrine of Tube City Min. & Mill. Co. v. Otterson, supra. I refer to Dockery v. Central Arizona Light & Power Co. (Ariz.) 45 P.(2d) 656, decided May 2, 1935, also written by Judge Lockwood, citing Foltz v. St. Louis. & S. F. Ry. Co. (C. C.A.) 60 F. 316, and Board of Com'rs of Lake ·County v. Platt (C.C.A.) 79 F. 567. In the case of Lisitzky v. Brady (1931) 38 Ariz. 337, 300 P. 177, 179, also written by Judge Lockwood, the plaintiff relied upon a declaratory judgment, and the defendant claimed that it was void in so far as it declared a lien in favor of plaintiff because it "was outside the issues of the pleadings, and therefore beyond the power of the court to render." There the court which rendered the declaratory judgment was exercising a special statutory jurisdiction unknown to the common law. In considering the effect of that decision, the court stated its position as follows: "Regardless of whether the pleadings properly raised the issue of whether or not an equitable lien existed as found by the court, we think appellant is in no position to question the judgment. A judgment can only be attacked collaterally when it

is void for want of jurisdiction. Henderson v. Towle, 23 Ariz. 377, 203 P. 1085. Since the court had jurisdiction of the subject-matter and the person of appellant, and the power to render the particular judgment which it did, defects in the pleadings cannot be raised at this time or in this manner. Tube City Min. & Mill. Co. v. Otterson, 16 Ariz. 305, 146 P. 203, L.R.A. 1916E, 303; 34 C.J. 560. But, even were this not true, we are of the opinion that under the pleadings the question of whether appellant had an equitable lien on the property was just as much involved in a determination of his rights arising under the contract between Cohen and Brady as that of whether the executory part of the contract had terminated with Cohen's death, and, since no appeal was taken, the decision is res adjudicata in the case at bar."

In view of these decisions, which are in accord with general law (see Black on Judgments, vol. 1 (2d Ed.) § 240, dealing with the subject, Jurisdiction of the Subject-Matter), I do not believe that it can be said that the Arizona Supreme Court is committed to the general principle that where the right claimed is based upon a statute rather than the common law, it is an essential to jurisdiction that the complaint state a cause of action.

The next question is as to the duty of a federal court sitting in Arizona with reference to the decision in Brecht v. Hammons, supra. In considering that question it should be noted that we are not directly concerned with that decision, that is to say, we are not dealing with the parties or with the matter litigated therein, and not even with the subject-matter therein involved. If we were concerned with the effect of that judgment or with the judgment therein declared void as justifying a sale under execution, we would be in a different relation to that judgment. Further, if we were dealing with the same subject-matter, that is, dealing with the obligation of a stockholder who had acquired stock before and in a bank organized before the constitutional and statutory provisions of Arizona which imposed the stockholders' liability were adopted, our duty to apply that decision would involve a different question from that here involved. Here a superior court of Arizona has entertained and rendered a judgment in an action for tort over which it clearly had jurisdiction under the Consti-

tution of Arizona, which provides: "The superior court shall have original jurisdiction in all cases of equity and in all cases at law which involve the title to, or the possession of, real property, or the legality of any tax, * * * and in all other cases in which the demand or the value of the property in controversy amounts to two hundred dollars exclusive of interest and costs. * * * The superior court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court." Article 6 § 6.

The alleged right to recover for the tort against the special administrator of the estate of the tort-feasor is based upon a statute which the Supreme Court of Arizona has not yet passed upon, but which we hold does not justify such an action, unless an action was begun and was pending against the tort-feasor at the time of her death. The superior court, we may assume, considered this question and decided it against the appellees (or their privies) and against our present conclusion. If that decision were by the highest court of Arizona, we would be bound by it; but no appeal was taken to that court. We are not bound by the interpretation the superior court placed on the statute. Without speculating as to the conclusion to which the Supreme Court of Arizona would arrive on such an appeal, we are confronted with the necessity of passing upon that matter now, and have agreed in our interpretation of that statute. Having concluded that the right of action against the tort-feasor did not survive unless an action was commenced prior to her death, it remains to consider the effect of a judgment of the state court holding to the contrary.

I do not believe that it is our duty to apply as a basis of our decision on that question the erroneous reason given by the Supreme Court of Arizona in another case dealing with other parties and a different subject-matter, and thus perpetuate an error and commit an injustice against the appellant in the case at bar. Judge DENMAN feels otherwise. I believe that it is impossible to secure a logical or just result by pressing an erroneous rule applied in one case to all other cases in which the wrong principle would be applicable. This is particularly true where the erroneous rule is itself illogical. Upon that subject I quote Black on Judgments, § 241: "In one of the early cases before the supreme court of the United States it was said, 'if the petitioner states such a case in his petition that on a demurrer the court would render a judgment in his favor, it is an undoubted case of jurisdiction.' But probably this was not meant as equivalent to saying that if the petition were demurrable there would be no jurisdiction. Indeed it would be impossible, on any rational theory, to make the jurisdiction depend upon the validity of the case stated by the plaintiff. For the court must pass upon the sufficiency of the declaration, and jurisdiction to proceed at least so far must be acquired by the mere filing of the pleading and service of process. But it is equally certain that a court cannot, in ordinary cases, initiate a proceeding sua sponte. Its jurisdiction and power remain at rest until called into activity by the application of a suitor. Jurisdiction of the subject-matter, therefore, dynamically considered, depends upon the act of the parties in invoking the aid of the law, in some regular manner, for the determination of their controversy."

Of course I realize that the question of the jurisdiction of a state court is peculiarly one of state cognizance where the question is one of applying and construing constitutional or statutory provisions giving or withholding jurisdiction, but we are not confronted with such a problem, nor are we likely to be in a state where full jurisdiction is given by constitutional provision in all actions at law. This is an action at law. True, the decision in Brecht v. Hammons, supra, was also one at law, but are we to assume that because the court there denied jurisdiction in that action at law we must deny jurisdiction in a different, in fact in all actions at law, where the complaint is insufficient to state a cause of action? In short, must we say that a rule applied in a particular case, dealing with a particular subject-matter, must be applied to all cases, even though it be conceded to be erroneous, and thus the whole doctrine of res judicata be impregnated with the error. My answer to these questions is twofold. (1) We are not bound to follow and apply an erroneous rule of law to an entirely different state of facts. (2) We are never compelled to follow the state court in the application of a general principle of law.

The first proposition seems fairly obvious for the reason that where the facts are different the ruling may be entirely different.

The second proposition is well settled. The effect to be given to a judgment of a court of general jurisdiction is a question of general law. Upon this question I cite without quotation the decision of Circuit Justice Field in Galpin v. Page, 9 Fed. Cas. 1126, No. 5,206, decided in this circuit in 1874.

To avoid misunderstanding, it should be stated that if the State Constitution or state statutes of Arizona expressly prohibited the court from exercising jurisdiction in certain cases, the federal court would be bound thereby, but the proposition that a State Constitution or state statute or state court can limit its courts of general jurisdiction to cases in which the plaintiff states a cause of action is manifestly incapable of intelligent application to practical affairs for some court must decide whether or not a plaintiff has a just grievance under the statute. If not in one court, then another.

Judge DENMAN states that Judge GARRECHT concurs in the view that the federal courts cannot interfere with the state court's determination of the powers and jurisdiction of state courts unless there is a violation of the due process clause of the Federal Constitution; citing Walker v. Sauvinet, 92 U.S. 90, 92, 23 L. Ed. 678. This may be freely conceded when properly applied; but we are not here concerned with the judgment in Brecht v. Hammons, supra, nor in any other case, excepting only the decision of the superior court, which is held void. We are only concerned with the case of Brecht v. Hammons, supra, as an authority which announces a rule of law inconsistent with both prior and subsequent decisions of the Arizona court of equal authority. Why should we apply an erroneous decision when the Arizona Supreme Court has repeatedly decided correctly that the statement of a good cause of action is not a jurisdictional requirement? When analyzed, Brecht v. Hammons, supra, is not a case of statutory construction, but an erroneous application of an alleged general principle. On this matter, the statement by Justice Strong, speaking for the Supreme Court, is apt, if not directly in point, in Town of Venice v. Murdock, 92 U.S. 494, 501, 23 L.Ed. 583: "It is argued, however, that the New-York decisions are judicial constructions of a statute of that State; and, therefore, that they furnish a rule by which we must be guided. The argument would have force if the decisions, in fact, presented a clear case of statutory construction; but they do not. They are not attempts at interpretation. They would apply as well to the execution of powers or authorities granted by private persons as they do to the issue of bonds under the statute of April 16, 1852. They assert general principles,—to wit, that persons empowered to borrow money and give bonds therefor, for the purpose of paying it to an improvement company, are not authorized to deliver the bonds directly to the company; a doctrine denied in this court, in the Supreme Court of Pennsylvania, and even in the Court of Appeals of New York. People v. Mead, 24 N.Y. [114], 124; Town of Venice v. Woodruff et al., 62 N.Y. 462 [20 Am.Rep. 495]. They assert, also, that, where an authority is given to an officer to execute and issue bonds (on the assent of two-thirds of the voters of a town, the assent to be obtained by the officer and filed in a public office, with an affidavit verifying the assent), the verification amounts to nothing, subserves no purpose, and that a bona fide holder of the bonds is bound to prove that the requisite number of voters did actually assent. They assert this as a general proposition. They do not assert that the statute so declares, or that such is even its implied requisition. There is, therefore, before us, no such case of the construction of a State statute by State courts as requires us to yield our own convictions of the right, and blindly follow the lead of others, eminent as we freely concede they are."

We now come to a rather curious situation which I feel should be mentioned in view of the conclusion of Judge GARRECHT that the rule is different with reference to common-law and statutory rights, and the conclusion of both my associates that the decision in Brecht v. Hammons, supra, establishes a peculiar rule or exception to the general rule, where the right relied upon is statutory or constitutional. In that case there was no question that the Constitution of Arizona and the statutes of Arizona confirmed the right sued upon. It was held that both State Constitution and statute were void in that regard as violative of the

Fourteenth Amendment to the Constitution.

On that point we quote: "We therefore hold that article 14, section 11, of the Constitution of Arizona, imposing double liability upon stockholders of insolvent banks, and all statutes passed in pursuance of such provision, in so far as it is attempted to apply them to banks organized before such constitutional provision was adopted, and whose charters contain a provision similar to that of the bank in the present case, is in conflict with article 1, section 10, of the Constitution of the United States, and unconstitutional. In view of the above expression it is unnecessary that we discuss the matter of the statute of limitations."

This is a federal question.

Thus the question decided in Brecht v. Hammons, supra, given its widest scope, is that the state superior court could not entertain jurisdiction of an action based upon a void statute or constitutional provision of Arizona. Certainly we are not bound to follow it further than this and to hold that the state court could not entertain an action for a tort based upon a statute because the right had expired or abated. In this connection we quote from the decision of the Supreme Court in Gantly's Lessee v. Ewing, 3 How. (44 U. S.) 707, 715, 716, 11 L.Ed. 794, as follows: "It is proper to remark, that it would be our duty on this point to follow the construction of the Supreme Judicial Court of Indiana, had it settled any; and this we would the more cheerfully do from the confidence we have in that tribunal; but nothing can be deemed as settled by the court of last resort in a state, unless it has adjudged the direct question; or unless the subject has, in an indirect form, and at various times, been brought before such court and treated as conclusively settled, and not open to controversy. This not appearing to be the case, it is certified to the Circuit Court that the sheriff's deed is void for the reasons stated."

I repeat that the Supreme Court of Arizona, in Brecht v. Hammons, supra, did not purport to interpret its own laws dealing with the jurisdiction of its courts, but stated an erroneous rule, a general principle, and applied it to the case in hand. Such a decision, if binding at all on the federal courts, is only binding upon the exact question decided, and as the Supreme Court had twice decided by necessary implication that there was jurisdiction in such a case, and as the point, although not dictum in Brecht v. Hammons, supra, was of no importance because the decision was the same as it would have been if this point had been decided the other way, I think we would not be bound even on the point directly decided in Brecht v. Hammons, supra, although it is unnecessary to go so far. In view of the fact that the Arizona court relied upon the decision of Grannis v. Superior Court, 146 Cal. 245, 79 P. 891, 106 Am.St. Rep. 23, it should be said that there the court was dealing with a statute which expressly prohibited the lower court from entering a decree of divorce until a year had expired from and after the interlocutory decree. It was held that this statute limited the jurisdiction of the court. That proposition was fairly debatable, but has no application to the situation under consideration here. The Arizona statutes relating to recovery for death caused by negligence do not purport to limit the powers of a court.

I think the judgment between the two administrators is valid, and that the judgment below should be reversed for that reason.